NANCY ROARK, Plaintiff-Appellant, v. MACOUPIN CREEK DRAINAGE DISTRICT *et al.*, Defendants-Appellees (Virginia Lee Johnston *et al.*, Defendants).

Fourth District   No. 4—98—1004

Opinion filed September 25, 2000.—Rehearing denied November 21, 2000.

John W. Guntren, of Jerseyville, for appellant.

Karen L. Kendall and Craig L. Unrath, both of Heyl, Royster, Voelker & Allen, of Peoria, and Scott D. Spooner, of Heyl, Royster, Voelker & Allen, of Springfield, for appellees.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In August 1994, plaintiff, Nancy Roark, filed a complaint under the Illinois Drainage Code (Drainage Code) (70 ILCS 605/1—1 through 12—23 (West 1992)) against defendants, claiming damages and requesting injunctive relief regarding defendants' failure to maintain the drainage system. In November 1994, Roark filed an amended complaint. Defendants responded by filing a motion to dismiss Roark's complaint as being barred by the application of the general immunity provisions and the statute of limitations of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 through 10—101 (West 1992)) and for failure to allege sufficient facts to state a cause of action (735 ILCS 5/2—615(a) (West 1994)). The trial court granted defendants' motion to dismiss and denied Roark's motion to reconsider.

Roark appeals, claiming that (1) the Tort Immunity Act does not bar her suit, and (2) her complaint states a cause of action. We reverse and remand.

## I. BACKGROUND

In August 1994, Roark filed a complaint against defendants for defendants' failure to maintain the drainage system used to drain her

land, claiming that the defendants' failure to repair the drainage system caused her land to repeatedly flood. In September 1994, defendants filed a motion for a more definite statement, asking Roark to pinpoint the specific dates on which Roark asked the district to repair the drainage system. In November 1994, in response to defendants' motion, Roark filed an amended complaint. Roark's amended complaint alleged that: (1) the drainage district was organized under Illinois law; (2) Dale Getting and Kenneth Crane were trustees or commissioners of the district; (3) drainage districts are formed to construct, maintain, and/or repair drainage systems; (4) the district breached its duty by failing to repair the drainage system, causing flooding and damage to Roark's real property; (5) Roark made repeated requests for repairs, beginning April 1991; and (6) in 1985 and recurring every year since, Roark's land has flooded. Roark asked the trial court to award her damages and to order the district to make the necessary repairs for proper drainage.

Defendants responded by filing a motion under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5), (a)(9) (West 1992)) to dismiss the portion of Roark's complaint requesting damages as being barred by the application of the statute of limitations and the general immunity provisions of the Tort Immunity Act. In that same motion, defendants moved to dismiss the portion of Roark's complaint requesting injunctive relief for failure to comply with section 4—26 of the Drainage Code (70 ILCS 605/4—26 (West 1992)) and for failure to allege sufficient facts to state a cause of action (735 ILCS 5/2—615 (West 1992)). In July 1995, the trial court granted defendants' motion to dismiss.

In November 1995, Roark filed a motion to reconsider. The trial court denied Roark's motion by docket entry dated November 16, 1995. This appeal followed.

## II. ANALYSIS

■ The Drainage Code authorizes landowners to form drainage districts "to construct, maintain[,] or repair drains or levees or to engage in other drainage or levee work for agricultural, sanitary[,] or mining purposes." 70 ILCS 605/3—1 (West 1992). Once formed, these districts, headed by their appointed or elected commissioners, are charged with the duty to inspect and maintain the drainage system. 70 ILCS 605/4—15 (West 1992). Specifically, "[t]he commissioners shall make an annual inspection of all the district's improvements and works and keep the drains, levees, pumping plants[,] and other works of the district in operation and repair." 70 ILCS 605/4—15 (West 1992). A district's failure to perform its duties can subject it to litiga-

tion and possible liability for "injury, death[,] or damage to property *** caused, in whole or in part, by the negligence *** in the performance or non-performance of [such] duties." 70 ILCS 605/4—40 (West 1992); see also 70 ILCS 605/3—24 (West 1992).

## A. Dismissal of Portion of Complaint Under Section 2—619

Roark argues that the trial court erred by dismissing the portion of her amended complaint requesting damages pursuant to sections 2—619(a)(5) and (a)(9) as being barred by the application of the statute of limitations and the general immunity provisions of the Tort Immunity Act. Roark contends that the Tort Immunity Act does not apply to drainage districts and, therefore, cannot bar her amended complaint. We conclude that the Tort Immunity Act applies to drainage districts; however, questions of fact exist that preclude dismissal at this early stage in the litigation.

### 1. *Applicability of the Tort Immunity Act to Drainage Districts*

■ The Tort Immunity Act states that its purpose "is to protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1—101.1(a) (West 1992). Therefore, the Tort Immunity Act applies to all local public entities and their employees. By definition, a local public entity includes counties, townships, municipalities, municipal corporations, school districts, school boards, educational service regions, regional boards of school trustees, community college districts, community college boards, forest preserve districts, park districts, fire protection districts, sanitary districts, museum districts, and all other local government bodies. 745 ILCS 10/1—206 (West 1992). Although drainage districts are not specifically listed as public entities by statute, these districts undoubtedly fit within the catchall category of "other local government bodies."

Drainage districts are "bod[ies] politic and corporate" (70 ILCS 605/3—24 (West 1992)), public corporations having such powers as the legislature has expressly conferred, or as are necessarily implied, by statute (*Nutwood Drainage & Levee District v. Mamer*, 10 Ill. 2d 101, 107, 139 N.E.2d 247, 252 (1956)). A body politic is defined as a "politically organized, collective body of a nation or State." *People v. Asbestospray Corp.*, 247 Ill. App. 3d 258, 263, 616 N.E.2d 652, 656 (1993). "[D]rainage districts are local subdivisions of the [s]tate, created by law for the purpose of administering certain functions of local government ***." *People ex rel. Croft v. Karr*, 244 Ill. 374, 385, 91 N.E. 485, 488 (1910). Therefore, drainage districts fall within the purview of the Tort Immunity Act.

## 2. *Discretionary Versus Ministerial Duties*

Defendants next argue that the Tort Immunity Act insulates them from liability for failing to maintain or repair the drainage system because that decision was discretionary. Roark counters, claiming that the defendants' duties were ministerial acts to which immunity did not attach.

■ Drainage districts are "not liable for *** injur[ies] resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1992). Moreover, a public employee serving in a position that requires him to determine policy or exercise discretion is not liable for injuries resulting from acts or omissions in determining such policy when exercising such discretion, even when such discretion is abused. 745 ILCS 10/2—201 (West 1992). Section 2—201 of the Tort Immunity Act codifies the common-law distinction between discretionary and ministerial duties. *Snyder v. Curran Township*, 167 Ill. 2d 466, 473, 657 N.E.2d 988, 992 (1995). Despite this codification, we continue to employ the common-law definitions of discretionary and ministerial functions. *Snyder*, 167 Ill. 2d at 473, 657 N.E.2d at 992. The distinction between discretionary and ministerial functions is not determined by a precise formula. *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 992. Therefore, "the determination whether acts are discretionary or ministerial must be made on a case-by-case basis." *Snyder*, 167 Ill. 2d at 474, 657 N.E.2d at 993-94.

Notwithstanding the *ad hoc* nature of these determinations, "[d]iscretionary acts are those which are unique to the particular public office and involve the exercise of judgment, while ministerial acts are those performed in a prescribed manner, in obedience to the mandate of legal authority, without regard to the exercise of discretion as to the propriety of the acts being done." *Corning v. East Oakland Township*, 283 Ill. App. 3d 765, 768, 670 N.E.2d 350, 352 (1996). Stated another way, discretionary acts are those that require personal deliberation, decision, and judgment, while ministerial acts are those amounting to the performance of a task in accordance with an order. *Bonnell v. Regional Board of School Trustees*, 258 Ill. App. 3d 485, 489, 630 N.E.2d 547, 549 (1994). Immunity will not attach unless the injury alleged results from an act performed or omitted by the public entity employee in determining policy and in exercising discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 1181 (1998).

Defendants argue:

> "Commissioners of drainage districts, as commissioners of highways, who have in good faith, to the best of their ability, exercised their judgment and used the means which the law

provides in the construction and preservation of the work committed to their charge, are not liable for an injury occurring without any intentional neglect of duty on their part ***. *Binder v. Langhorst*, 234 Ill. 583, 587, 85 N.E. 400, 402 (1908)."

Defendants, therefore, argue that, in good faith and to the best of their ability, they exercised their judgment in determining that Roark's request for repairs was unwarranted. Defendants overlook the fact that, by statute, the Illinois legislature has imposed upon drainage district commissioners and, therefore, on drainage districts, a duty to "keep the drains, levees, pumping plants[,] and other works of the district in operation and repair." 70 ILCS 605/4—15 (West 1992). Even the title of section 4—15 emphasizes this duty: "Duty to keep system in repair—Minor improvements." 70 ILCS 605/4—15 (West 1992).

■ Moreover, we have stated previously:

"Arguably, the decision not to maintain or inspect *** property was an act of discretion, but this is 'an impermissibly expansive definition of discretionary immunity.' [Citation.] Every failure to maintain property could be described as an exercise of discretion under defendants' expansive approach. We do not believe that the legislature intended such a result, otherwise it would not have codified the common[-]law duty to maintain property ***." *Corning*, 283 Ill. App. 3d at 768-69, 670 N.E.2d at 353.

In the present case, we do not believe that the legislature intended to permit drainage commissioners to insulate their negligence by automatically labeling every failure to repair a drainage system as a "discretionary" decision. We conclude, however, that the issue of whether the district's *decision* not to repair the system was discretionary or ministerial presents questions of fact that need to be resolved in the trial court.

Further, in their motion to dismiss Roark's amended complaint and in their appellate brief, defendants claim that the real property in question had been declared a wetland, which prevented them from repairing the drainage system. Specifically, defendants argue that (1) the land described in Roark's complaint had been declared a wetland; (2) landowners must obtain a permit from the Army Corps of Engineers before dredging or filling wetlands; (3) the land cannot be developed without a permit; (4) as a result of this wetland status, defendants were under no duty and had no authority to drain the land; and (5) defendants cannot be held liable for failing to drain this land.

Accordingly, defendants argue that their decision not to repair or clean up the drainage system was based, in part, on "their reasonable

belief and understanding that to perform this work would subject the [d]istrict and its commissioners to criminal and civil liability from the Soil Conservation Service." Defendants admit, however, that under this section they could have filed for a permit to conduct any necessary work on the drainage system. Defendants chose not to apply for such a permit. Moreover, this argument is not an appropriate ground on which to dismiss Roark's complaint, but also presents questions of fact to be resolved in the trial court.

### 3. *Statute of Limitations*

Alternatively, defendants argue that, even if they are subject to liability because their duties are classified as being ministerial, Roark's claim is barred by the Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8—101 (West 1992). Roark, however, claims that a five-year statute of limitations applies for private actions brought against the drainage districts. 70 ILCS 605/2—5 (West 1992); 735 ILCS 5/13—205 (West 1992).

Section 8—101 of the Tort Immunity Act states:

"No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8—101 (West 1992).

The Drainage Code, however, states that "[t]he provisions of the Civil Practice Law and all existing and future amendments and modifications thereof *** shall apply to all proceedings hereunder." 70 ILCS 605/1—7 (West 1992). The Code of Civil Procedure, in turn, provides for a five-year statute of limitations when instituting an action "to recover damages for an injury done to property, real or personal." 735 ILCS 5/13—205 (West 1992). Therefore, this court must determine which of these conflicting provisions applies to the present case.

Traditionally, the decision as to which of two conflicting statutes controlled hinged on determining which provision was more specifically applicable to the individual case. " '[W]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail.' " *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195, 595 N.E.2d 561, 563 (1992), quoting *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205, 120 N.E.2d 15, 31 (1954).

To determine which one of two conflicting provisions more specifically addresses a particular matter, courts have typically looked to the nature of the plaintiff's action and the injury sustained. See *Bertolis v. Community Unit School District No. 7*, 283 Ill. App. 3d 874, 880, 671 N.E.2d 79, 83 (1996) (determining that the limitations period for

personal injury actions brought by minors that accrued during minority governed the plaintiff's claim because it more specifically addressed the plaintiff and the nature of the plaintiff's injury than the Tort Immunity Act); *Zimmer v. Village of Willowbrook*, 242 Ill. App. 3d 437, 442, 610 N.E.2d 709, 713 (1993) (holding that the limitations period for action brought against a body politic relating to acts or omissions in construction is more specific than the Tort Immunity Act); *Walsh v. Barry-Harlem Corp.*, 272 Ill. App. 3d 418, 426, 649 N.E.2d 614, 619 (1995) (holding the medical malpractice limitation statute more applicable than the limitations period contained in the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 270a(e)), because the malpractice statute applied only to malpractice action whereas the latter applied to a variety of cases); *Desai v. Chasnoff*, 146 Ill. App. 3d 163, 167, 496 N.E.2d 1203, 1205 (1986) (holding the malpractice limitation statute more applicable than that contained in the Uniform Commercial Code—Sales (Ill. Rev. Stat. 1983, ch. 26, par. 2—725(1)), because the former applies only to·a particular claim and the latter applies to all breaches of contract for sale); *Cleaver v. Marrese*, 253 Ill. App. 3d 778, 782-83, 625 N.E.2d 1129, 1132-33 (1993) (holding the medical malpractice limitations period, rather than the Tort Immunity Act's limitations period, more specifically applied to malpractice actions).

Recently, however, the Supreme Court of Illinois evaluated the "more specifically applicable" distinction when two limitation statutes apply to a single cause of action. In *Tosado v. Miller*, 188 Ill. 2d 186, 720 N.E.2d 1075 (1999), the supreme court addressed the issue of whether the one-year limitations period of the Tort Immunity Act (745 ILCS 10/8—101 (West 1996)) or the two-year limitations period for medical malpractice (735 ILCS 13—212(a) (West 1992)) applied to a medical malpractice claim against a county hospital. *Tosado*, 188 Ill. 2d at 189, 720 N.E.2d at 1077. The supreme court issued a severely split plurality opinion in which only one justice concurred without further qualification. Two justices concurred in the result but wrote separate special concurrences, explaining their rationale. *Tosado*, 188 Ill. 2d at 197-98, 198-200, 720 N.E.2d at 1082, 1082-83 (Freeman, C.J., specially concurring; Heiple, J., also specially concurring). The other three justices dissented. *Tosado*, 188 Ill. 2d at 200, 201-11, 720 N.E.2d at 1083, 1083-88 (Harrison, J., dissenting; McMorrow, J., also dissenting, joined by Rathje, J.).

Writing for the plurality, Justice Miller reasoned as follows:

> "In enacting section 8—101 of the Tort Immunity Act, we believe, the legislature intended to protect a specific class of defendants, local governmental entities and their employees. Thus, in medical

malpractice actions against local governmental entities or their employees the focus should be on the defendants rather than the cause of action or the type of injuries sustained by the plaintiffs.

By focusing on the category of defendants at issue in this case, it is clear that section 8—101 of the Tort Immunity Act is more specific than section 13—212 of the Code of Civil Procedure. Section 8—101 specifically applies to defendants which are local entities and the employees of those entities which are a more specific category of defendant within the broader group of any physician, dentist, registered nurse[,] or hospital described in section 13—212(a). Because section 8—101 of the Tort Immunity Act is the more specific statute when considering causes of action against local governmental entities and their employees, we believe the one-year limitation provision of section 8—101 of the Tort Immunity Act applies to actions against those defendants." *Tosado*, 188 Ill. 2d at 195, 720 N.E.2d at 1080-81.

In their separate concurrences, then Chief Justice Freeman and Justice Heiple both agreed that the one-year statute of limitations in section 8—101 of the Tort Immunity Act applied. *Tosado*, 188 Ill. 2d at 197-98, 720 N.E.2d at 1082 (Freeman, C.J., specially concurring; Heiple, J., also specially concurring). Both justices, however, rejected the plurality's characterization that the statute of limitations for the Tort Immunity Act was more specific than that for medical malpractice claims. Both justices concluded that "to the extent that section 8—101 is more general than section 13—212(a), this is one of those instances where ' "the legislature intended to make the general act controlling." ' " *Tosado*, 188 Ill. 2d at 199, 198, 720 N.E.2d at 1082-83, 1082 (Heiple, J., also specially concurring; Freeman, C.J., concurring and joining in Justice Heiple's special concurrence on this point), quoting *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 266, 602 N.E.2d 808, 812 (1992), quoting 2B N. Singer, Sutherland on Statutory Construction § 51.05, at 174 (5th ed. 1992).

In her dissent, in which Justice Rathje joined, Justice McMorrow concluded that the two-year statute of limitations period in section 13—212(a) of the Code of Civil Procedure applied. *Tosado*, 188 Ill. 2d at 211, 720 N.E.2d at 1088 (McMorrow, J., dissenting, joined by Rathje, J.). Focusing on the nature of the cause of action, Justice McMorrow reasoned that section 8—101 of the Tort Immunity Act applied to *all* civil actions against local governmental entities and their employees, whereas section 13—212(a) only applied to medical malpractice actions. *Tosado*, 188 Ill. 2d at 206, 720 N.E.2d at 1086 (McMorrow, J., dissenting, joined by Rathje, J.). Therefore, Justice McMorrow concluded that the two-year period in section 13—212(a) applied more specifically than the one-year period of section 8—101 of the Tort Im-

munity Act. Additionally, Justice Harrison wrote a separate dissenting opinion in which he simply stated that the line of cases finding the limitations period for medical malpractice more specifically applicable than the Tort Immunity Act was correct. *Tosado*, 188 Ill. 2d at 200, 720 N.E.2d at 1083 (Harrison, J., dissenting).

■ Because *Tosado* is a plurality decision, its precedential value as applied to the present case is unclear. Plurality opinions are often limited in their precedential value. See *People v. Foggy*, 121 Ill. 2d 337, 359, 521 N.E.2d 86, 95 (1988) (Simon, J., dissenting). In fact:

"[P]lurality decisions of a state supreme court, in which no majority agrees to the reasoning, are not binding under the doctrine of *stare decisis*; if a majority merely agrees to a particular result, without agreeing as to the grounds for a decision, the parties are bound by the decision but the case provides no binding authority beyond the immediate parties. Such decisions do not overrule prior or inconsistent decisions, and are not authority on any point concurred in by less than a majority. The mere ability to construct, from various concurring and dissenting opinions, a common denominator of probable outcome on an issue addressed in only one of those opinions does not make for a majority holding of the state supreme court. When a specific issue or view fails to attract a majority of specific concurring votes, the threshold between dictum and rule of law is not crossed and no mandate is generated nor legal authority granted as to that issue or view." 5 Am. Jur. 2d *Appellate Review* § 602, at 298 (1995).

Therefore, the *Tosado* decision has left this court in the unfortunate position of determining which approach must be utilized to determine which of two equally applicable statutes of limitations controls.

The *Tosado* decision is severely splintered. The plurality in *Tosado* limited its decision to "medical malpractice actions against local government entities or their employees." *Tosado*, 188 Ill. 2d at 195, 720 N.E.2d at 1080. The plurality opinion also narrowed the "focus of the inquiry" to *"the statutes at issue here"* and addressing only *"these* defendants." (Emphasis added.) *Tosado*, 188 Ill. 2d at 194, 720 N.E.2d at 1080. By the plurality's own language, the *Tosado* decision limited its precedential value specifically to the facts of that case.

Moreover, although Justice McMorrow strongly advocates that courts continue to consider the nature of the cause of action to determine which statute is more specifically applicable, rather than focusing on the nature of the defendant, Justice McMorrow blurs this very distinction in her analysis. Justice McMorrow states that "section 13—212(a) controls, because it narrows, or makes more specific, *the class of defendants* as those individuals and entities directly involved." (Emphasis added.) *Tosado*, 188 Ill. 2d at 206, 720 N.E.2d at

1086 (McMorrow, J., dissenting, joined by Rathje, J.). In essence, Justice McMorrow considers *both* the nature of the cause of action *and* the nature of the defendants.

Given the split in the *Tosado* decision, we feel that we can ignore neither the plurality's analysis nor the dissent's devotion to the traditional approach. In the present case, section 8—101 is more specifically applicable when considering either the type of action or the category of defendants.

■ Under the traditional approach, looking solely at the nature of the cause of action, section 8—101 is more specifically applicable to this case. The Tort Immunity Act refers to "any [tort] action, whether based upon the common law or statutes or Constitution of [Illinois]" brought against a local entity or its employees. 745 ILCS 10/8—101 (West 1992). Section 8—101, therefore, is narrow, applying only to tort actions. See *Raintree Homes, Inc. v. Village of Kildeer*, 302 Ill. App. 3d 304, 307, 705 N.E.2d 953, 955 (1999). In comparison, section 13—205 of the Code of Civil Procedure is very broad, applying to actions on unwritten contracts or on awards of arbitration or to recover damages for an injury done to property or to recover the possession of personal property or damages from the detention or conversion thereof, and all civil actions for which the legislature did not provide a specific statute of limitations. 735 ILCS 5/13—205 (West 1992). Therefore, based solely upon the type of actions that could possibly be brought under each statute, section 8—101 of the Tort Immunity Act is narrower in scope than section 13—205 applicable to the Drainage Code. Comparing the causes of actions, section 8—101 is more specifically applicable to this case.

Even under the *Tosado* plurality's approach, looking solely to the category of the defendants, section 8—101 is more specifically applicable. Section 8—101 applies only to governmental entities and their employees. 745 ILCS 10/8—101 (West 1992). Section 13—202, however, applies to all defendants of suits sounding in contract, injury to property, or any other category for which no specific statute of limitations has been designated. 735 ILCS 5/13—205 (West 1992). Comparing the categories of defendant covered by each statute, section 8—101 is more specifically applicable. Therefore, section 8—101 of the Tort Immunity Act applies to Roark's suit.

### 4. *Ongoing or Recurring Injury*

Roark additionally argues that regardless of which statute of limitations applied, she suffered recurring injury. Such ongoing injury would have tolled the statute of limitations and prevented her claim from being time-barred.

■ "Where a tort involves repeated injury, the statute of limitations in Illinois begins to run from the date of the last injury or when the tortious acts cease." *Starcevich v. City of Farmington*, 110 Ill. App. 3d 1074, 1079, 443 N.E.2d 737, 740 (1982). "A continuing violation *** is occasioned by continuing unlawful acts and conduct, not [merely] by continual ill effects from an initial violation." *Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 763, 574 N.E.2d 129, 132 (1991). If the injury is in fact ongoing, any limitations period would not have begun to run until the date of the last injury. *Leckrone v. City of Salem*, 152 Ill. App. 3d 126, 137-38, 503 N.E.2d 1093, 1101 (1987). By contrast, where a single overt action, rather than a series of acts, produces continued ill effects or injury, the statute of limitations begins to run at the time the single overt action occurred. *Hyon*, 214 Ill. App. 3d at 765, 574 N.E.2d at 134.

The Fifth District Appellate Court has previously concluded that a defendant's failure to inspect and maintain a sewage drainage canal, failure to prevent the accumulation of silt and debris in it, and failure to prevent erosion along its banks are recurrent and ongoing injuries caused by negligent use, operation, and maintenance of the drainage canal. *Gass v. Metro-East Sanitary District*, 186 Ill. App. 3d 1077, 1087, 542 N.E.2d 1229, 1236 (1989). The situation in the present case is similar.

■ Here, Roark's claims are based on the duty of the drainage district's commissioner to "make an annual inspection of all the district's improvements and works and keep the drains, levees, pumping plants[,] and other works of the district in operation and repair." 70 ILCS 605/4—15 (West 1992). Therefore, the ongoing failure to keep the drain system functional was an ongoing violation that Roark alleges caused her ongoing injury. Therefore, because this was a recurring injury caused by the district's continuous failure to perform its duties, the statute of limitations runs from the date of the last injury.

Under section 2—619(a)(5) of the Code of Civil Procedure, a defendant may raise a statute of limitations issue in a motion to dismiss. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 84, 651 N.E.2d 1132, 1138 (1995). When a defendant does so, the plaintiff must provide enough facts to avoid application of the statute of limitations. *Hermitage*, 166 Ill. 2d at 84, 651 N.E.2d at 1138. In her amended complaint, Roark specifically stated that, since 1985 and each subsequent year thereafter, the district's continual failure to repair or maintain its drainage system has caused approximately 20 acres of Roark's farm ground to flood, preventing her from planting or harvesting farm crops or, alternately, has caused Roark to lose valuable crops. Therefore, Roark pleaded the district's ongoing tortious conduct as the cause for her recurring injury.

When a defendant files a motion to dismiss under section 2—619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the pleading. *Hermitage*, 166 Ill. 2d at 85, 651 N.E.2d at 1139. Therefore, taking Roark's pleading as true, we find that Roark alleged sufficient facts to sustain her claim of ongoing injury and to preclude dismissing her claim as being barred by the statute of limitations at this early stage in the litigation.

## B. Dismissal of Portion of Complaint Under Section 2—615

Roark argues that the trial court erred by dismissing the portion of her amended complaint requesting injunctive relief under section 2—615 for failure to comply with section 4—26 of the Drainage Code and for failure to allege sufficient facts to state a cause of action. We agree.

### 1. *Request for Injunctive Relief*

■ The Tort Immunity Act does not apply to the right to obtain relief other than damages sought against a local public entity or its employees. 745 ILCS 10/2—101 (West 1992). Therefore, application of the Tort Immunity Act could not have barred Roark's claim for injunctive relief. Defendants concede this point.

■ Defendants, however, claim that Roark failed to comply with section 4—26 of the Drainage Code, which states that "[i]n the event of dispute or disagreement between the commissioners and any owner of land in the district ***, the commissioners or such owner *may* petition the court to specify the nature and extent of the drainage system or to specify and define with particularity those duties and obligations with respect to such dispute or disagreement." (Emphasis added.) 70 ILCS 605/4—26 (West 1992). The legislature's use of the word "may" suggests that compliance with this section is permissive rather than mandatory. Although Roark could have petitioned the trial court to specify the commissioners' duties, Roark was not obligated to do so. Roark merely chose to seek injunctive relief with regard to the commissioners' duties as provided under section 4—15 of the Drainage Code. 70 ILCS 605/4—15 (West 1992). Therefore, because Roark properly petitioned the court, her request for injunctive relief was improperly dismissed.

### 2. *Allegations of Sufficient Facts To State a Cause of Action*

■ Finally, the trial court dismissed Roark's complaint for failure to allege sufficient facts to state a cause of action. Roark claims, however, that her complaint alleged the necessary breach of duty and resulting damages to sufficiently state a cause of action.

A plaintiff is not required to plead evidence in his complaint but is

only required to allege ultimate facts. *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 662, 646 N.E.2d 930, 932 (1995); *Kling v. Landry*, 292 Ill. App. 3d 329, 340, 686 N.E.2d 33, 41 (1997). In the present case, Roark alleged that (1) defendants had a duty to maintain and repair the drainage system under section 4—15 of the Drainage Code, (2) defendants breached their duty by failing to make necessary repairs, and (3) as a result of defendants' breach, Roark's property was repeatedly flooded and damaged. Roark alleged sufficient facts to state a cause of action. Therefore, the trial court erred by dismissing the portion of Roark's amended complaint requesting injunctive relief.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment that dismissed Roark's complaint and remand for further proceedings.

Reversed and remanded.

McCULLOUGH and GARMAN, JJ., concur.