BETTY LOU EADS, Plaintiff-Appellant, v. HERITAGE ENTERPRISES, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—99—0954

Argued May 23, 2000.—Opinion filed September 26, 2001.

STEIGMANN, P.J., dissenting.

Kenneth B. Graves (argued), of Springfield, for appellant.

Paul Bown, of Brown, Hay & Stephens, of Springfield, for appellee Memorial Health Ventures.

Karen L. Kendall and Craig L. Unrath (argued), both of Heyl, Royster, Voelker & Allen, of Peoria, and Kurt M. Koepke, of Heyl, Royster, Voelker & Allen, of Springfield, for other appellees.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In September 1999, the trial court dismissed the first-amended complaint of plaintiff, Betty Lou Eads, and allowed her 90 days within which to file a second-amended complaint. In November 1999, the trial court granted Eads leave to seek interlocutory review under Supreme Court Rule 308 (155 Ill. 2d R. 308) from this court to answer a certified question. We answer the question in the negative and remand for further proceedings.

## I. BACKGROUND.

In June 1998, Eads was a resident of Memorial ContinuCare (Con-

tinuCare), an extended-term nursing facility owned and operated by defendants, Heritage Enterprises Inc., Rutledge Joint Ventures, LLC, d/b/a Memorial ContinuCare, and Memorial Health Ventures. During her stay at ContinuCare, Eads fell and fractured her hip while attempting to use a rest room. In May 1999, Eads filed suit against defendants, alleging numerous causes of action, including breach of contract and fiduciary duty, *res ipsa loquitur*, and violations of the Nursing Home Care Act (Nursing Home Act) (210 ILCS 45/3—601 (West 1998)).

Defendants filed a motion to dismiss pursuant to section 2—613(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2—613(a) (West 1998)). The trial court granted defendants' motion to dismiss, finding that Eads' complaint improperly commingled causes of action in violation of section 2—613 of the Code but granted Eads leave to replead.

In July 1999, Eads filed a three-count amended complaint, alleging only that defendants acted negligently under the Nursing Home Act. In her amended complaint, Eads alleged that she became feverish, weak, confused, and unsteady on her feet, suffered hallucinations, and was unable to comprehend verbal instructions. Eads claims that the ContinuCare staff members knew of her weakened condition and that she was unsteady, unresponsive, and disoriented, yet permitted her to repeatedly get out of bed, without assistance, to use the bathroom. Eads further claims that defendants were negligent by failing to (1) adequately supervise her activity, (2) ensure that she did not walk without assistance, (3) respond to her call light when she requested assistance, (4) equip her bed with a pressure release to alert staff that Eads had risen from her bed, and (5) adequately staff the facility to ensure appropriate assistance would be provided.

Defendants again moved to dismiss Eads' amended complaint (735 ILCS 5/2—622(g) (West 1998)), arguing that her claim sounded in "healing art malpractice." Specifically, defendants complained that Eads must (1) attach an affidavit attesting that she or her attorney had spoken with a qualified physician who thought her claims were meritorious and (2) include a copy of the physician's written report made after reviewing Eads' medical records. 735 ILCS 5/2—622(a) (West 1998). Eads responded that her claims were not "healing art malpractice" claims but were negligence claims specifically allowed by the Nursing Home Act (210 ILCS 45/3—601 (West 1998)); therefore, she was not obligated to file an accompanying affidavit and written physician's report.

In November 1999, the trial court granted defendants' motion and dismissed Eads' amended complaint but granted her leave to replead. Eads chose instead to seek interlocutory review under Supreme Court Rule 308 (155 Ill. 2d R. 308). This appeal followed.

## II. ANALYSIS

### A. The Certified Question

The trial court certified the following question:

> "In a case where the [p]laintiff has sued a nursing home for injuries sustained as a result of alleged violations, by the nursing home, its staff[,] and employees, of the [Nursing Home Act] and the regulations promulgated pursuant thereto [77 Ill. Adm. Code § 300 *et seq.* (West 2001)], is the [p]laintiff required to comply with the mandates of [section 2—622 of the Code]?"

Plaintiff urges this court to answer this certified question in the negative, arguing that requiring plaintiffs who file a cause of action pursuant to the Nursing Home Act to comply with section 2—622 of the Code would nullify the purpose of the Nursing Home Act. In addition, Eads argues that the Nursing Home Act and section 2—622 are irreconcilably in conflict. We agree with both propositions for the following reasons.

### B. The Purpose of the Statutes

After reviewing the purpose of each statute, we conclude that their purposes are opposite. The Nursing Home Act encourages litigation against owners and licensees of a nursing home for the protection of nursing home residents, and section 2—622 discourages litigation in the area of medical malpractice.

#### 1. *Nursing Home Act*

■ The Nursing Home Act was enacted because of concerns over reports of "inadequate, improper, and degrading treatment of patients in nursing homes." 81st Ill. Gen. Assem., Senate Proceedings, May 14, 1979, at 184 (statements of Senator Berning). Its purpose is to provide protection for nursing home residents. *Springwood Associates v. Lumpkin*, 239 Ill. App. 3d 771, 777, 606 N.E.2d 733, 736 (1992). The Nursing Home Act provides two methods of implementing this goal. First, private nursing homes must be licensed and regulated by the Department of Public Health (Department); and second, nursing home residents are granted a private right of action against nursing homes for violations of the residents' rights. *Springwood Associates*, 239 Ill. App. 3d at 777, 606 N.E.2d at 736. The legislature realized that the Department cannot daily police every nursing home and detect every violation of the Nursing Home Act, and that the residents are in the best position to know of and seek redress for violations. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 369, 489 N.E.2d 1374, 1382 (1986).

As a further incentive for residents to seek legal redress, the Nurs-

ing Home Act provides attorney fees to a resident whose rights under the Nursing Home Act were violated. Specifically, section 3—602 provides that "[t]he licensee shall pay the actual damages and costs and attorney's fees to a facility resident whose rights, as specified in [p]art 1 of [a]rticle II of this [Nursing Home] Act, are violated." 210 ILCS 45/3—602 (West 1998). In addition, the Nursing Home Act provides for the award of punitive damages for willful and wanton misconduct. *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291, 300, 710 N.E.2d 827, 832 (1999) ("Under the amended version of the statute, plaintiff may recover actual damages and attorney fees upon proof of defendant's negligent violations of the Act, and may additionally recover common[-]law punitive damages upon proof of willful and wanton misconduct on the part of defendant"). The Nursing Home Act also permits class actions to be brought (210 ILCS 45/3—604 (West 1998)); remedies to be cumulative, and no restrictions to be placed on any party to prevent them from seeking any additional remedy (210 ILCS 45/3—714 (West 1998)); and damages to be exempt from public-aid recovery (210 ILCS 45/3—605 (West 1998)).

The Nursing Home Act has been amended many times since it was first enacted. Even though the legislature has amended the Nursing Home Act, the legislature has never chosen to adopt the procedural limitations found in section 2—622 for long-term care in nursing homes. In fact, the legislative history of the Nursing Home Act and its amendments reflect a real concern about the quality of care received in these facilities and about the preservation of a cause of action for violation of residents' rights, in keeping with the statute's purpose. For example, in 1995, when the legislature amended the provisions of the Nursing Home Act that permitted the recovery of treble damages, Senator Fawell made the following statement during one of the Senate debates:

> "The elimination of the mandatory provision [to award treble damages] in no way prevents a judge or jury from awarding punitive damages in any amount, even in excess of [treble] damages, if actions of the nursing home or any of its employees or agents are deemed to be intentional or willful and wanton, or grossly negligent. In addition, the bill retains the current and unique provision requiring that a nursing home pay the attorney's fees of a successful plaintiff ensuring nursing home residents will be able to secure legal representation." 89th Ill. Gen. Assem., Senate Proceedings, May 24, 1995, at 90 (Statements of Senator Fawell).

## 2. Section 2—622 of the Code

■ Section 2—622, often referred to as the "healing art malpractice act," was enacted to remedy a perceived crisis in the area of medi-

cal malpractice. *Bernier v. Burris*, 113 Ill. 2d 219, 229, 497 N.E.2d 763, 768 (1986). It is designed to reduce the number of frivolous suits that are filed and to eliminate such actions at an early stage, before the expenses of litigation have mounted. *DeLuna v. St. Elizabeth's Hospital*, 147 Ill. 2d 57, 65, 588 N.E.2d 1139, 1142 (1992). To achieve its purpose, section 2—622 requires the filing of an affidavit and written report by an expert setting forth his opinion of the reasonable and meritorious cause for the filing of a case. In addition, in furtherance of its purpose, section 2—1114 of the Code limits the amount of attorney fees recoverable in medical malpractice actions, and section 2—1115 of the Code prohibits the seeking of punitive damages in a healing art malpractice case. 735 ILCS 5/2—1114, 2—1115 (West 1998).

## C. The Statutes Conflict

Eads argues that the Nursing Home Act and section 2—622 of the Code dealing with "healing art malpractice" are "irreconcilably in conflict." Specifically, Eads contends that the relevant portions of the Nursing Home Act, which outline residents' rights, the liability of the owner or licensee, and damage recovery (210 ILCS 45/2—101 through 2—113, 3—601 through 3—612 (West 1998)), imply that all negligence-type actions (including "healing art malpractice") can be pleaded under the Nursing Home Act and need not comply with other applicable statutory provisions, namely, the healing art malpractice statute. Therefore, Eads argues that the Nursing Home Act conflicts with section 2—622 of the Code. Further, Eads contends that the Nursing Home Act *does not* require a physician's certificate to initiate any type of suit. In contrast, section 2—622 *does* require a physician's certificate for all medical, hospital, or healing arts malpractice suits.

Section 2—622(a) of the Code states that "[i]n any action, whether in tort, contract[,] or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," the plaintiff's attorney or plaintiff must attach an affidavit attesting to the fact that plaintiff has consulted with a knowledgeable, qualified, and experienced health professional who certifies that "there is a reasonable and meritorious cause for filing of such action." 735 ILCS 5/2—622(a) (West 1998). Moreover, plaintiff must attach "[a] copy of the written report, clearly identifying the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists." 735 ILCS 5/2—622(a)(1) (West 1998). The Nursing Home Act, however, contains no such provision requiring the filing of an expert certificate and written report. In addition, the Nursing Home Act does provide for the recovery of attorney fees and an award of punitive

damages, whereas section 2—622 does not. Accordingly, we conclude that the relevant provisions of the Nursing Home Act and section 2—622 of the Code do conflict. We must decide which of the two conflicting statutes controls in the present case.

## D. The Nursing Home Act Applies

Eads argues that the Nursing Home Act is more specifically applicable to the facts in the present case and, therefore, controls over section 2—622. We agree.

■ "Traditionally, the decision as to which of two conflicting statutes controlled hinged on determining which provision was more specifically applicable to the individual case." *Roark v. Macoupin Creek Drainage District*, 316 Ill. App. 3d 835, 842, 738 N.E.2d 574, 581 (2000). Where two statutory provisions exist, one of which is general— *i.e.*, designed to apply to cases generally—and the other which is more specific—*i.e.*, related to a particular subject—the more specific provision prevails. *Roark*, 316 Ill. App. 3d at 842, 738 N.E.2d at 581.

As we discussed in *Roark*, the Supreme Court of Illinois's sharply divided opinion in *Tosado v. Miller*, 188 Ill. 2d 186, 720 N.E.2d 1075 (1999), evaluated the more "specifically applicable distinction" where two limitations statutes apply to a single cause of action. *Roark*, 316 Ill. App. 3d at 843-46, 738 N.E.2d at 582-83. Although "courts have typically looked to the nature of the plaintiff's action and the injury sustained" to determine the level of applicability (*Roark*, 316 Ill. App. 3d at 842, 738 N.E.2d at 581), the *Tosado* plurality opinion found that the distinction was more properly made by "focusing on the category of defendants" (*Tosado*, 188 Ill. 2d at 195, 720 N.E.2d at 1080). However, in *Roark*, we found that "[g]iven the split in the *Tosado* decision, we feel that we can ignore neither the plurality's analysis nor the dissent's devotion to the traditional approach." *Roark*, 316 Ill. App. 3d at 846, 738 N.E.2d at 583. Similarly, here, we cannot ignore either approach and will analyze the statutes under both approaches.

■ Under the traditional approach, looking solely at the nature of the cause of action, the Nursing Home Act is more specifically applicable to this case. The Nursing Home Act only pertains to cases *arising from nursing home care* (210 ILCS 45/3—601) (West 1998) ("The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident"), which is the type of case we have here. In contrast, section 2—622 applies to *any* actions, whether in tort, contract or otherwise, arising from *any* medical, hospital, or healing art treatment (735 ILCS 2—622(a) (West 1998)). Therefore, based upon the type of actions that could possibly be brought under each statute, the Nursing

Home Act is narrower in scope than section 2—622. Because Eads' claims arise from nursing home care, the Nursing Home Act is more specifically applicable to her case.

Even under the *Tosado* plurality's approach, looking solely to the category of the defendants, the Nursing Home Act is also more specifically applicable to this case. The Nursing Home Act *applies only to suits against the owner and licensee of nursing homes or facilities* for causes of action by or on behalf of recipients of nursing home care. 210 ILCS 45/3—601 (West 1998) (the owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees that injures the resident). Section 2—622, however, *applies to all defendants* in any suits sounding in medical, hospital, or healing art malpractice (regardless of where the injury occurred). 735 ILCS 5/2—622(a) (West 1998). Comparing the categories of defendants covered by each statute—owner and licensee of the nursing home versus all defendants in any suits sounding in medical, hospital, or healing art malpractice—the Nursing Home Act is more specifically applicable to the present case. Therefore, we conclude that the Nursing Home Act applies to Eads' suit and, as such, Eads was not required to file a section 2—622 certificate.

### E. SUMMARY

We conclude that our finding more closely aligns with the legislative purpose and intent of the Nursing Home Act. We recognize that the purpose of section 2—622 was to eliminate frivolous lawsuits at the pleading stage. We further note that this court has previously agreed that the legislature intended section 2—622 to be a fairly broad provision not limited to actions against physicians and hospitals. *Lyon v. Hasbro Industries, Inc.*, 156 Ill. App. 3d 649, 653, 509 N.E.2d 702, 705 (1987). However, we conclude that it should not be construed so broadly as to be used as a means of depriving plaintiffs of their substantive rights. Requiring plaintiffs who bring a suit pursuant to the Nursing Home Act to go to the expense of hiring an expert to evaluate the case and to render an opinion in a written report would thwart the purpose of the Nursing Home Act. It would impose additional expense and would cause delay, both of which many nursing home residents cannot afford, in terms of money and time. See *Harris*, 111 Ill. 2d at 369, 489 N.E.2d at 1382-83, where the Supreme Court of Illinois observed:

> "[R]esidents, either because of their advanced age, mental or physical infirmities[,] or lack of financial resources are often unlikely to pursue costly and time-consuming litigation in the hope of receiving an uncertain or small recovery. As plaintiff observes, the expected time it would normally take to resolve the case frequently

is longer than a resident's life expectancy. A nursing home resident under such circumstances has little incentive to seek redress for violations of the [Nursing Home] Act. Moreover, many violations of the Act will yield little in the way of actual monetary damages."

The purpose of the Nursing Home Act is to encourage residents to seek redress from owners and licensees of nursing homes due to acts of neglect or abuse inflicted upon them while residents in nursing homes. The legislature provided many incentives to promote the purpose of the statute, such as the award of attorney fees to encourage lawyers to take the cases of neglect or abuse of the elderly, cases which may at times have relatively little monetary value. In addition, the legislature provided protection for those who report abuse or neglect under the Nursing Home Act. Specifically, section 3—609 provides:

"Any person, institution or agency, under this [a]ct, participating in good faith in the making of a report, or in the investigation of such a report[,] *** shall have immunity from any liability, civil, criminal[,] or any other proceedings, civil or criminal[,] as a consequence of making such report. The good faith of any persons required to report, or permitted to report, cases of suspected resident abuse or neglect under this [a]ct, shall be presumed." 210 ILCS 45/3—609 (West 1998).

Moreover, we note most of the Nursing Home Act addresses nonmedical long-term care, which does not require expert testimony. For example, the Nursing Home Act defines (1) maintenance as "food, shelter[,] and laundry services" (210 ILCS 45/1—116 (West 1998)); and (2) personal care as "assistance with meals, dressing, movement, bathing[,] or other personal needs or maintenance, or general supervision and oversight of the physical and mental well-being of an individual, who is incapable of maintaining a private, independent residence or who is incapable of managing his person" (210 ILCS 45/1—120 (West 1998)). However, nothing in the plain language of the Nursing Home Act limits causes of actions brought pursuant to this act to non-medical malpractice claims. In fact, section 1—117 defines neglect as "a failure in a facility to provide adequate *medical* or personal care or maintenance, which failure results in physical or mental injury to a resident or in the deterioration of a resident's physical or mental condition." (Emphasis added.) 210 ILCS 45/1—117 (West 1998).

Further, we note that the Nursing Home Act is not the sole avenue for relief by a nursing home resident. The Supreme Court of Illinois found that the Nursing Home Act permitted a resident to elect his cause of action either under the Nursing Home Act or common-law punitive damages. " 'The well-established rule *** is that where a

statute gives a new remedy and contains no negative, express or implied, of the remedy which previously existed, the new remedy is to be regarded as cumulative and not exclusive *and a party may elect as between the two*.' [Citations]." (Emphasis added.) *Harris*, 111 Ill. 2d at 365, 489 N.E.2d at 1380. In addition, the plain language of the Nursing Home Act provides that "[t]he remedies provided by this Act are cumulative and shall not be construed as restricting any party from seeking any remedy, provisional or otherwise, provided by law for the benefit of the party, from obtaining additional relief based upon the same facts" (210 ILCS 45/3—714 (West 1998)), such as a remedy pursuant to healing art malpractice.

We find no indication that the legislature intended section 2—622 to defeat a plaintiff's right to bring suit pursuant to the Nursing Home Act. The Nursing Home Act has been amended several times, and the legislature has never adopted the procedural limitations found in section 2—622. In contrast, the amendments broaden the rights available to the residents of nursing homes, such as, an award of attorney fees and an award of punitive damages for willful and wanton misconduct.

Moreover, this court has, in fact, previously recognized a private right of action against a nursing home (*Springwood Associates*, 239 Ill. App. 3d at 777, 606 N.E.2d at 736). We continue to recognize such a right. After reviewing the language and purpose of each statute, we conclude that requiring a plaintiff to file a physician's certificate to initiate a suit would thwart the Nursing Home Act's purpose, which is to encourage legal redress for injuries that occur in the nursing home facility. Moreover the Department, the Attorney General's office, or the State's Attorney's office is not required to comply with section 2—622 when it files a cause of action for violations of the Nursing Home Act. We can find no rationale for requiring a resident to comply with section 2—622. Accordingly, a plaintiff who brings a suit pursuant to the Nursing Home Act is not required to comply with the mandates of section 2—622 of the Code.

In light of our ruling, we need not decide the nature of Eads' claims, namely, whether they sound in healing art malpractice.

## III. CONCLUSION

We answer the certified question in the negative and conclude that claims arising under the Nursing Home Act do not require compliance with section 2—622 of the Code.

Certified question answered; cause remanded.

COOK, J., concurs.

PRESIDING JUSTICE STEIGMANN, dissenting:
I agree with the trial court that section 2—622 of the Code—the "healing art malpractice statute"—applies to Eads' three-count amended complaint filed July 1999. Accordingly, I respectfully dissent.

The majority is correct that (1) portions of the Nursing Home Act and the Code are irreconcilable and (2) the Nursing Home Act, being the more specific statutory provision, governs. However, the majority's analysis is flawed because it concludes that just because *some* sections of the Nursing Home Act and the Code conflict, section 2—622 of the Code can be disregarded in an action raising a healing art malpractice claim when it is brought pursuant to the Nursing Home Act.

Eads assumes, and the majority agrees, that the relevant portions of the Nursing Home Act, which outline (1) residents' rights, (2) the liability of the owner or licensee, and (3) damage recovery (210 ILCS 45/2—101 through 2—113, 3—601 through 3—612 (West 1998)), imply that all negligence-type actions (including "healing art malpractice") can be pleaded under the Nursing Home Act and thus need not comply with other applicable statutory provisions. That is simply not the case. The plain language of section 2—622 of the Code states that it applies to *any* action where damages are sought for injuries resulting from medical, hospital, or other "healing art malpractice." 735 ILCS 5/2—622(a) (West 1998).

Moreover, section 1—108(b) of the Code addresses whether section 2—622 of the Code should apply to a claim that is governed by another statute:
> "(b) In proceedings in which the procedure is regulated by statutes other than those contained in this [a]ct, such other statutes control to the extent to which they regulate procedure but [a]rticle II of this [a]ct applies to matters of procedure *not regulated by such other statutes.*" (Emphasis added.) 735 ILCS 5/1—108(b) (West 1998).

The Nursing Home Act contains no provision regulating pleadings. Accordingly, the relevant provisions of the Nursing Home Act and section 2—622 of the Code are not in conflict, and if a "healing art malpractice" claim arises in a facility covered by the Nursing Home Act, section 1—108(b) of the Code governs, and the plaintiff is required to conform with the pleading requirements of section 2—622 of the Code.

The certified question in this case is quite broad and appears to seek a definitive yes or no response to the abstract question of whether

*any* action pursuant to the Nursing Home Act must comply with the requirements of section 2—622 of the Code. Because the answer depends largely upon the factual allegations contained in the complaint, analysis should focus on the specific allegations raised to support the claim, rather than a categorical approach.

Eads contends that even if section 2—622 of the Code applies to "healing art malpractice" claims arising in nursing homes, the negligence that caused her injury was not in the nature of "healing arts malpractice." Rather, it resulted from (1) negligent supervision, surveillance, and staffing; (2) failure to promptly respond to the "call light" (which forced Eads to try to get out of bed on her own); and (3) failure to equip Eads' bed with a pressure-release alarm. Defendants contend that these allegations, even if true, are based on Eads' need for medical attention, assistance, and care. Therefore, according to defendants, the claims sound in malpractice, and Eads is required to submit an affidavit and the reviewing health professional's written report, pursuant to section 2—622(a) of the Code (735 ILCS 5/2—622(a) (West 1998)). Defendants are correct.

Although the scope of section 2—622 has not yet been precisely defined (*Lyon*, 156 Ill. App. 3d at 653, 509 N.E.2d at 705), the legislature intended it to be a broad provision that is not limited to actions against physicians and hospitals. In *Lyon*, 156 Ill. App. 3d at 654, 509 N.E.2d at 706, the court noted that " 'healing art' could include negligence by a licensed health-care service and need not be limited to a licensed professional practitioner. *** [T]he phrase may be interpreted as broad enough to cover negligence in the interrelated health-care services."

Further, the legislative history of section 2—622 of the Code reveals that Senate amendment No. 1 amended the original house bill (84th Ill. Gen. Assem., House Bill 1604, 1985 Sess.), changing the term "physician" to "health professional" in provisions relating to consultations prior to filing a complaint (84th Ill. Gen. Assem., Senate Proceedings, June 12, 1985, at 39-40); the House later adopted Senate amendment No. 1 (84th Ill. Gen. Assem., House Proceedings, June 18, 1985, at 51-52). This change supports the *Bernier* court's analysis that the legislature intended that the statute be broadly construed, envisioning malpractice claims against persons and entities who are not necessarily licensed physicians.

Nursing homes such as ContinuCare are licensed by the State, regulated through the Nursing Home Act (210 ILCS 45/3—101 through 3—807 (West 1998)) and the Illinois Administrative Code (77 Ill. Adm. Code § 300 *et seq.* (Weil 2001)), and provide health-related services to their residents in varying degrees. Thus, medical services

rendered in a nursing home such as ContinuCare fall within the definition of "healing arts."

However, not every patient who suffers an injury in a hospital, medical facility, or nursing home is limited to suing for malpractice, as opposed to common-law negligence. *Woodard v. Krans*, 234 Ill. App. 3d 690, 703, 600 N.E.2d 477, 486 (1992). A person or entity can negligently injure another in a hospital or other medical setting without committing "healing art malpractice." For example, if a hospital patient slips and falls on a freshly mopped floor, his resulting claim would sound in negligence, not malpractice. Thus, the location or place of the injury is of little importance in determining whether the claim sounds in malpractice or negligence. The *nature of the negligent act alleged*, not whether the act occurred in a hospital or involved some medical treatment, should determine whether the activity constitutes "healing art malpractice." *Owens v. Manor Health Care Corp.*, 159 Ill. App. 3d 684, 688, 512 N.E.2d 820, 823 (1987).

Cases that require expert analysis of a medical condition, treatment procedure, or diagnosis fall within the purview of the term "healing art malpractice," while cases alleging ordinary negligence do not. *Owens*, 159 Ill. App. 3d at 689, 512 N.E.2d at 823-24. Accordingly, determining whether a particular claim must comply with section 2—622 of the Code is a fact-specific analysis.

In the case at bar, Eads arrived at ContinuCare after being treated in the hospital for transient ischemic attacks. While ContinuCare may provide primarily custodial care to some patients, it also provides medical treatment to residents who need it. Eads was admitted to ContinuCare for medical, albeit restorative, treatment.

Eads alleged that she arrived at ContinuCare not yet fully recovered from her illness. She was weak, unsteady, and unresponsive. In her amended complaint, Eads asserted that ContinuCare staff knew that she was not verbalizing, making eye contact, or otherwise giving signals that she understood instructions, and she was hallucinating.

Further, Eads alleged that ContinuCare failed to adequately equip her bed with a pressure-release alarm, so as to alert ContinuCare staff if she got up from her bed. Consistent with our holding in *Lyon*—that adequately equipping an ambulance requires medical judgment—this court should conclude that ContinuCare's decisions (1) regarding how to keep Eads from walking unassisted in her weakened condition and (2) not to equip her bed with an alarm each required a medical judgment.

Eads' claim regarding ContinuCare's lack of care and supervision in allowing her to fall involves issues that are inherently medical. Accordingly, her claim sounds in "healing art malpractice," not

negligence under the Nursing Home Act (210 ILCS 45/3—601 (West 1998)), and she is required to strictly conform to the pleading requirements set forth in section 2—622 of the Code (735 ILCS 5/2—622 (West 1998)).

Claims grounded in violations of the Nursing Home Act constitute separate and distinct causes of action that must comply with the requirements of section 2—622 of the Code to the extent that the factual allegations allege conduct that constitutes "healing art malpractice." Since section 2—622 was enacted in 1985, practitioners have not had a substantial problem in determining whether particular sets of facts and circumstances fall within this rubric. No reason exists to conclude that confusion and uncertainty will now be interjected into this process merely because the acts or omissions (or both) giving rise to the claim occur at the hands of nursing home personnel.