(text box: 1) NO. 5-00-0285

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

FRANK MILOS, Individually and as )  Appeal from the

Special Administrator of the Estate of )  Circuit Court of

Cindy Milos, Deceased, )  St. Clair County.

)

     Plaintiff-Appellant, ) 

)

)  No. 99-L-577A

)

TRACY HALL, EDWARD A. UTLAUT )

HOSPITAL, INC., and HARRY W. PARKS, )  Honorable

)  Milton S. Wharton,

     Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court:

The plaintiff appeals from an order of the St. Clair County circuit court dismissing counts VII, VIII, and IX of the third amended complaint for the failure to comply with section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 1996)).  In this appeal, brought pursuant to Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), the plaintiff argues that section 2-622 is not applicable because counts VII, VIII, and IX do not allege medical malpractice.

Cindy Milos was admitted to the emergency room of the Edward A. Utlaut Hospital (Utlaut Hospital) at approximately 3:54 a.m. on March 23, 1998.  At that time, Mrs. Milos was seen by the emergency room physician, Tracy Hall, M.D.  According to the plaintiff's complaint, Mrs. Milos presented with all the signs and symptoms of a diabetic crisis, but she was discharged without any diagnosis and without having been tested or treated for the symptoms.  At 2:50 p.m., about 12 hours after she was discharged, Mrs. Milos was brought back to the emergency room in cardiorespiratory arrest and in a diabetic crisis.  Blood tests revealed elevated blood sugar levels and severe diabetic ketoacidosis.  Mrs. Milos did not recover and was pronounced dead at 3:58 p.m. on March 23, 1998.  The decedent's husband, Frank Milos, and her mother requested a complete autopsy.  Both signed a consent-for-autopsy form provided by Utlaut Hospital.  Utlaut Hospital then summoned Dr. Harry W. Parks, a licensed physician who practiced in the field of pathology, to conduct the autopsy.  Dr. Parks performed the autopsy and issued a written autopsy report.

On June 28, 1999, Frank Milos (plaintiff), individually and in his capacity as the special administrator of the estate of Cindy Milos, deceased, filed suit against Utlaut Hospital, Tracy Hall, M.D., and Harry W. Parks, M.D., based upon events arising during Cindy Milos' admissions to Utlaut Hospital on March 23, 1998.  The wrongful-death and survival counts against Utlaut Hospital and Dr. Hall were based upon a theory of medical negligence.  The counts against Dr. Parks were based on the theory that Dr. Parks intentionally omitted from his autopsy report pertinent facts regarding the decedent's premortem condition and intentionally misrepresented his conclusions regarding the cause of death, in order to protect Dr. Hall and Utlaut Hospital from potential civil litigation.  The complaint at issue, plaintiff's third amended complaint, contains three counts (counts VII, VIII, and IX) against Dr. Parks.  Each count is based upon alleged intentional misrepresentations and contains the following allegations:

"12.  That with respect to the said autopsy, Dr. Harry W. Parks had a fiduciary duty to the Estate of Cindy Milos to provide accurate and complete information regarding the cause of death of Cindy Milos.

13.  That on or about April 1, 1998, Dr. Harry W. Parks willfully and wantonly breached his fiduciary duty in that in his report he intentionally omitted the fact of Cindy Milos' diabetic crisis and its causal relationship to Cindy Milos' death and that said report was intentionally misleading regarding the cause of death.

14.  That the said decision by Harry W. Parks, M.D.[,] to intentionally omit any reference of Cindy Milos' diabetic crisis in the autopsy report was not based upon any medical judgment but was based entirely upon a desire to protect Utlaut Hospital from a potential civil action."

Plaintiff also alleged that they were damaged as a result of the permanent loss of  accurate medical information concerning the decedent's cause of death.

Dr. Parks filed a motion to dismiss, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 1996)).  In his motion, Dr. Parks argued that counts VII, VIII, and IX of the third amended complaint should be dismissed because plaintiff's claims were based on medical negligence and plaintiff failed to file an affidavit of merit as required by section 2-622.  Plaintiff countered that section 2-622 did not apply because the counts against Dr. Parks did not allege medical negligence.  The trial court granted Dr. Parks' motion to dismiss, finding that the conduct alleged in those claims sounded in medical negligence and that plaintiff had not filed the required section 2-622 affidavit of merit.

In reviewing an order granting a motion to dismiss for the failure to state a cause of action, we must determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Rekosh v. Parks
, 316 Ill. App. 3d 58, 63, 735 N.E.2d 765, 771 (2000).  A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts could be proven which would entitle a plaintiff to recover.  
Rekosh
, 316 Ill. App. 3d at 63, 735 N.E.2d at 771.  No complaint is bad in substance that contains such information as reasonably informs the defendant of the nature of the claim he is called upon to meet.  
Stanley Magic-Door, Inc. v. City of Chicago
, 74 Ill. App. 3d 595, 598, 393 N.E.2d 535, 537 (1979).  We review an order granting a section 2-615 motion to dismiss 
de novo
.  
Burgess v. Pocrnich
, 284 Ill. App. 3d 757, 758, 672 N.E.2d 1334, 1336 (1996).

Section 2-622 of the Illinois Code of Civil Procedure provides in pertinent part as follows:

"Healing art malpractice.  (a) In any action, whether in tort, contract[,] or otherwise, in which the plaintiff seeks damages for injuries or death by reason of 
medical, hospital, or other healing art malpractice
, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of the complaint, declaring one of the following: ***." (Emphasis added.)  735 ILCS 5/2-622(a) (West 1996).

In this appeal, we must determine whether section 2-622 applies to the claims filed against Dr. Parks.  Therefore, we must determine whether the acts alleged in the counts against Dr. Parks constitute healing art malpractice.

Although section 2-622 does not define the phrase "healing art malpractice", Illinois courts have considered the scope and meaning of that phrase.  In 
Lyon v. Hasbro Industries, Inc.
, 156 Ill. App. 3d 649, 653, 509 N.E.2d 702, 705 (1987), the appellate court began its analysis by considering the meaning of the specific terminology at issue, in order to ascertain the legislature's intent.  The court noted:

" 'Healing' is defined as: 'The restoration to a normal mental or physical condition ***.'  (Taber's Cyclopedic Medical Dictionary 725 (15th ed. 1985).)  'Art' is defined as a skill acquired by experience, study, or observation and as a branch of learning.  (Webster's Ninth New Collegiate Dictionary 105 (1986).)  'Malpractice' is defined as incorrect or negligent treatment of the patient by a person responsible for his health care.  (Taber's Cyclopedic Medical Dictionary 1001 (15th ed. 1985).)  It is also defined as a dereliction from a professional duty or a failure to exercise an adequate degree of care in rendering service.  Webster's Ninth New Collegiate Dictionary 721 (1986)."  
Lyon
, 156 Ill. App. 3d at 653, 509 N.E.2d at 705.

Applying principles of statutory construction, the court concluded that the phrase "healing art" should be given broad application encompassing "an entire branch of learning dealing with the restoration of physical or mental health".  
Lyon
, 156 Ill. App. 3d at 654, 509 N.E.2d at 706.  In addition, the fact that the words "medical", "hospital", and "other" modify or describe the term "healing art" and are connected by the conjunction "or" also indicates that the legislature intended that section 2-622 apply to the many branches of healing arts, including medical healing arts and hospital healing arts.

Although this section has been deemed to have a broad application, not every act or omission committed by a physician or hospital constitutes healing art malpractice.  See, 
e.g.
, 
Cohen v. Smith
, 269 Ill. App. 3d 1087, 1092-93, 648 N.E.2d 329, 333-34 (1995); 
Edelin v. Westlake Community Hospital
, 157 Ill. App. 3d 857, 862, 510 N.E.2d 958, 961 (1987).  The nature of the act alleged should determine whether the activity constitutes healing art malpractice.  See 
Lyon
, 156 Ill. App. 3d at 655, 509 N.E.2d at 706.

In this case, it is alleged that plaintiff granted consent to Dr. Parks to perform a complete autopsy and relied upon Dr. Parks to properly perform the procedure and to provide complete and accurate information in the autopsy report about the decedent's premortem quality of care and cause of death.  Plaintiff has alleged that Dr. Parks wilfully and maliciously omitted certain premortem lab results from the report in order to misrepresent the cause of death, for the purpose of protecting other doctors from liability claims.  Plaintiff has not alleged that Dr. Parks breached an accepted standard of care while attempting to restore Cindy Milos to normal mental or physical condition.  We recognize that an autopsy is a medical procedure requiring a skill acquired by experience, study, or observation.  However, it is not, by definition, a "healing art".  The goal of the autopsy procedure is not to restore normal physical or mental health.  Though we do not wish to sound callous, we must point out that Dr. Parks did not treat Cindy Milos, the patient; he performed an autopsy on a dead body.  Any breach of duty arising from the performance of an autopsy and the preparation of the autopsy report cannot be the basis for a cause of action sounding in healing art malpractice.

Further, the fact that plaintiff may have to present expert testimony to establish professional standards governing the preparation and content of autopsy reports does not transform this case into a healing arts malpractice action.  The nature of the acts alleged determines whether the activity constitutes healing art malpractice.  See 
Lyon
, 156 Ill. App. 3d at 655, 509 N.E.2d at 706.  By way of illustration, consider the following hypothetical case.  A hospital escalator stops abruptly and without warning, causing a visitor who was riding the escalator to fall and break his arm.  Assume also that the hospital provides appropriate care to the visitor and the arm heals properly.  Under those hypothetical facts, the hospital's liability arises from the failure to maintain its escalator in proper working order and not from healing art malpractice.  Nevertheless, the visitor may be required to procure expert testimony to establish that the hospital failed to comply with industry standards governing the maintenance of escalators in health care centers.  The fact that expert testimony is required to establish a breach of duty does not convert that action to a hospital-healing-art-malpractice action.  Similarly, the fact that plaintiff may be required to procure expert testimony to establish that Dr. Parks breached a duty by failing to comply with established professional standards and procedures governing the preparation and the content of an autopsy report does not convert the pending action to one sounding in medical healing art malpractice.  Accordingly, a section 2-622 affidavit was not required, and the circuit court erred in dismissing counts VII, VIII, and IX against Dr. Parks on that basis.

Viewing the allegations in counts VII, VIII, and IX of plaintiff's third amended complaint in a light most favorable to plaintiff, we conclude that the facts alleged reasonably inform Dr. Parks of the nature of the claims he is being called upon to defend and are sufficient to state a cause of action upon which relief can be granted.  Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed; cause remanded.

GOLDENHERSH and WELCH, JJ., concur.

                                      NO. 5-00-0285

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

FRANK MILOS, Individually and as )  Appeal from the

Special Administrator of the Estate of )  Circuit Court of

Cindy Milos, Deceased, )  St. Clair County.

)

     Plaintiff-Appellant, ) 

)

)  No. 99-L-577A

)

TRACY HALL, EDWARD A. UTLAUT )

HOSPITAL, INC., and HARRY W. PARKS, )  Honorable

)  Milton S. Wharton,

     Defendants-Appellees. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: September 28, 2001

___________________________________________________________________________________

Justices
: Honorable Gordon E. Maag, P.J.

Honorable Richard P. Goldenhersh, J., and

Honorable Thomas M. Welch, J.,

Concur

___________________________________________________________________________________

Attorney
 Mark Levy, Levy, Levy & Stipes, P.C., 220 South Buchanan, Edwardsville, IL 

for
 62025

Appellant
 

___________________________________________________________________________________

Attorneys
 Timothy S. Richards, Neville, Richards, DeFranco & Wuller, 5 Park Place

for
 Professional Centre, P.O. Box 20070, Belleville, IL 62226-0070 (for Tracy Hall -

Appellees
 NO BRIEF FILED)

Edward S. Bott, Jr., Greensfelder, Hemker & Gale, P.C., 2000 Equitable Building,

10 South Broadway, St. Louis, MO 63102-1774 (for Edward A. Utlaut Hospital, 

Inc. - NO BRIEF FILED)

Michael J. Pitzer, Anne-Marie Risavy, Rabbitt, Pitzer & Snodgrass, P.C., 800 

Market Street, Suite 2300, St. Louis, MO 63101 (for Harry W. Parks)

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/28/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.