787 N.E.2d 771 (2003)
204 Ill.2d 92
272 Ill.Dec. 585
Betty Lou EADS, Appellee,
v.
HERITAGE ENTERPRISES, INC., et al., Appellants.
No. 92691.
Supreme Court of Illinois.
February 21, 2003.
Rehearing Denied March 31, 2003.
*772 Heyl, Royster, Voelker & Allen (Karen L. Kendall and Craig L. Unrath, Peoria, Kurt M. Koepke, Frederick P. Velde, Matthew R. Booker, Springfield, of counsel), for appellants.
Kenneth B. Graves, Springfield, for appellee.
Justice RARICK delivered the opinion of the court:
The sole issue in this case is whether a plaintiff asserting a private right of action under the Nursing Home Care Act (210 ILCS 45/1-101 et seq. (West 2000)) must attach to her complaint the certificate of merit and supporting report required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2000)), popularly known as the Healing Arts Malpractice Act. On a permissive interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill.2d R. 308), the appellate court answered this question in the negative, holding that section 2-622 is inapplicable to claims arising under the Nursing Home Care Act. 325 Ill.App.3d 129, 258 Ill.Dec. 722, 757 N.E.2d 107. One justice dissented. We granted leave to appeal from the appellate court's judgment (177 Ill.2d R. 315) and now affirm.
The litigation which gave rise to this appeal commenced when plaintiff, Betty Lou Eads, brought an action in the circuit court of Sangamon County to recover damages for personal injuries she sustained in a fall at Memorial ContinuCare (Continu-Care), a for-profit, extended-term nursing facility located in Springfield, Illinois. Named as defendants were ContinuCare's three owners, Heritage Enterprises, Inc.; Rutledge Joint Ventures, L.L.C.; and Memorial Health Ventures.
Plaintiff's complaint, as amended, alleged that she resided at ContinuCare for approximately one week in July of 1998. Plaintiff had gone to the facility following her release from Memorial Medical Center, where she had been hospitalized for transient ischemic attacks. At the time she arrived at ContinuCare, plaintiff was weak, unsteady, and suffering from confusion. She subsequently became feverish, which caused additional confusion, hallucinations, weakness, unsteadiness, and an inability to comprehend instructions given to her by the facility's staff.
Plaintiff's amended complaint alleged that defendants, as the owners and operators of ContinuCare, by and through their staff, agents or employees, were aware that she was suffering from the foregoing problems. The complaint further alleged *773 that defendants were aware that plaintiff repeatedly got out of bed without assistance to go to the bathroom. On one such trip, she fell. The fall caused her to fracture her hip and produced severe bruises on her head and body.
Plaintiff sought to impose liability on defendants for her injuries pursuant to the Nursing Home Care Act (210 ILCS 45/1-101 et seq. (West 2000)). Specifically, plaintiff asserted that, under the Act, defendants owed her a duty to "ensure that [she] was assisted at all times when she needed to ambulate from her bed to the bathroom." Plaintiff contended that defendants breached that duty by failing to provide adequate surveillance and supervision; failing to promptly respond to her call light, which forced her to attempt to use the bathroom without assistance; failing to equip her bed with a pressure-release alarm that would have alerted the facility's staff when she got out of bed so that they could come and assist her; failing to provide adequate staff to ensure that residents, including plaintiff, would have assistance when they required it; failing to attend to plaintiff's needs; and allowing plaintiff to fall in her room as she attempted to go to the bathroom. For her relief, plaintiff sought an award of damages plus her costs and attorney fees.
Defendants moved to dismiss plaintiff's cause of action under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2000)). As grounds for their motion, defendants argued that plaintiff should be precluded from proceeding with her claims because she did not attach to her complaint the certificate of merit and supporting report required by section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2000)), the Healing Arts Malpractice Act. The circuit court found this contention to be meritorious. It therefore dismissed plaintiff's complaint with leave to replead.
On plaintiff's motion, the circuit court subsequently made a written finding pursuant to Supreme Court Rule 308(a) (155 Ill.2d R. 308(a)) that its dismissal order involved a question of law as to which there is substantial ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation. The specific question of law identified by the court was as follows:
"In a case where the Plaintiff has sued a nursing home for injuries sustained as a result of alleged violations by the nursing home, its staff and employees, of the Illinois Nursing Home Care Act [210 ILCS 45/1-101 et seq. (West 2000) ], and the regulations promulgated pursuant thereto at 77 Illinois Administrative Code Section 300, et seq., is the Plaintiff required to comply with the mandates of * * * the Healing Arts Malpractice Act [735 ILCS 5/2-622 (West 2000) ]?"
Once the circuit court made its written finding, plaintiff applied to the appellate court for leave to appeal from the circuit court's dismissal order. The appellate court granted her application. Over the dissent of one justice, the court then answered the foregoing question of law in the negative, holding that actions brought under the Nursing Home Care Act are not subject to the mandates of the Healing Arts Malpractice Act. 325 Ill.App.3d at 138, 258 Ill.Dec. 722, 757 N.E.2d 107.
Defendants subsequently petitioned our court for leave to appeal from the appellate court's judgment. We granted that petition, and the matter is now before us for review. Because the appeal concerns a question of law certified by the circuit court pursuant to Supreme Court Rule 308, because it presents a question of statutory interpretation, and because it arose in the context of an order granting a section *774 2-619 motion to dismiss, our review is de novo. Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A., 186 Ill.2d 472, 480, 239 Ill.Dec. 12, 713 N.E.2d 543 (1999); Michigan Avenue National Bank v. County of Cook, 191 Ill.2d 493, 503, 247 Ill.Dec. 473, 732 N.E.2d 528 (2000); Nowak v. St. Rita High School, 197 Ill.2d 381, 389, 258 Ill.Dec. 782, 757 N.E.2d 471 (2001).
The Nursing Home Care Act, upon which plaintiff's cause of action is founded, was adopted more than 20 years ago "amid concern over reports of `inadequate, improper and degrading treatment of patients in nursing homes.'" Harris v. Manor Healthcare Corp., 111 Ill.2d 350, 357-58, 95 Ill.Dec. 510, 489 N.E.2d 1374 (1986), quoting Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statements of Senator Karl Berning). It was described by one of its principal sponsors as a "`full reform of the nursing home industry.'" Harris, 111 Ill.2d at 358, 95 Ill.Dec. 510, 489 N.E.2d 1374, quoting Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 181 (statements of Senator Richard M. Daley).
The Act repealed the nursing homes, sheltered care homes and homes for the aged act (Ill.Rev.Stat.1977, ch. 111½, par. 35.16 et seq.) and
"replaced it with a comprehensive statute which established standards for the treatment and care of nursing home residents; created minimum occupational requirements for nurses aides; and expanded the power of the Illinois Department of Public Health to enforce the provisions of the Act." Harris v. Manor Healthcare Corp., 111 Ill.2d at 358, 95 Ill.Dec. 510, 489 N.E.2d 1374.
A principal component of the Act is the residents' "bill of rights," under which nursing home residents are guaranteed certain rights, including the right to manage their own finances, the right to refuse treatment, and the right to be free from abuse and neglect by nursing home personnel. See 210 ILCS 45/2-101 through 2-113 (West 2000); see also Harris v. Manor Healthcare Corp., 111 Ill.2d at 358, 95 Ill.Dec. 510, 489 N.E.2d 1374.
To ensure that nursing homes comply with the Act, the legislature invested the Department of Public Health with expanded regulatory and enforcement powers, and created civil as well as criminal penalties. See, e.g., 210 ILCS 45/3-119, 3-301 through 3-318 (West 2000); see also Harris v. Manor Healthcare Corp., 111 Ill.2d at 358-59, 95 Ill.Dec. 510, 489 N.E.2d 1374. It also expressly granted nursing home residents a private cause of action for damages and other relief against nursing home owners and operators who violate its provisions. 210 ILCS 45/3-601, 3-602, 3-603 (West 2000). Fisher v. Lexington Health Care, Inc., 188 Ill.2d 455, 461, 243 Ill.Dec. 46, 722 N.E.2d 1115 (1999).
In granting private remedies to nursing home residents, the General Assembly embraced the concept of a "private attorney general." It realized that the Department of Public Health could not police every nursing home on a daily basis and could not detect every violation of the Act. It also realized that nursing home residents themselves are in the best position to know of and seek redress for violations. See Springwood Associates v. Lumpkin, 239 Ill.App.3d 771, 777, 179 Ill.Dec. 901, 606 N.E.2d 733 (1992).
Under section 3-601 of the Act, owners and licensees of a facility are liable to a resident for injuries caused by the intentional or negligent acts or omissions of their employees or agents. 210 ILCS 45/3-601 (West 2000). Section 3-602 requires licensees to pay actual damages and costs and attorney fees to nursing home residents whose rights under the Nursing Home Care Act are violated. 210 ILCS 45/3-602 (West 2000). Section 3-603 permits *775 nursing home residents to maintain an action under the Nursing Home Care Act for any other type of relief permitted by law, including injunctive and declaratory relief. 210 ILCS 45/3-603 (West 2000).
The cause of action asserted by plaintiff in the case before us is premised on the foregoing statutory provisions. There is no dispute that the allegations of plaintiff's complaint, if proved, would entitle her to relief under the Act. Defendants' challenge to her cause of action is based solely on procedural grounds. They argue that plaintiff should be precluded from proceeding against them under the Nursing Home Care Act because she did not comply with section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2000)), commonly referred to as the Healing Arts Malpractice Act.
The Nursing Home Care Act itself contains no special procedures regulating the conduct of private rights of action brought pursuant to its provisions. Such actions are therefore governed by article II of the Code of Civil Procedure (735 ILCS 5/2-101 et seq. (West 2000)), also known as the Civil Practice Law (735 ILCS 5/1-101(b) (West 2000)), and by the Illinois supreme court rules on civil proceedings in the trial court (134 Ill.2d R. 1).
Among the provisions of article II of the Code of Civil Procedure is section 2-622 (735 ILCS 5/2-622 (West 2000)), the Healing Arts Malpractice Act. That statute, however, does not apply to all civil actions. By its terms, it is applicable only to "action[s], whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2-622(a) (West 2000).
In damage actions based on "medical, hospital or other healing art malpractice," section 2-622 requires the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, to file an affidavit, attached to the complaint, declaring that he has consulted with a health-care professional who has determined, by written report, that "there is a reasonable and meritorious cause for filing of such action." A copy of the written report, "clearly identifying the plaintiff and the reasons for the reviewing health professional's determination," must be attached to the affidavit. 735 ILCS 5/2-622(a)(1) (West 2000). Failure to comply is grounds for dismissal under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2000)). 735 ILCS 5/2-622(g) (West 2000).
No affidavit or report of the type described by section 2-622 was attached to plaintiff's complaint. The absence of such supporting documentation was the basis for the circuit court's order granting defendants' motion to dismiss. The circuit court correctly recognized, however, that its dismissal order can be sustained only if plaintiff's cause of action under the Nursing Home Care Act is subject to the requirements of the Healing Arts Malpractice Act. That is why the court certified the question of law before us today.
When the applicability of section 2-622 was raised in the circuit court, the threshold issue addressed by the parties and considered by the court was whether plaintiff's cause of action sounded in "medical, hospital or other healing art malpractice" within the meaning of that statute. In holding that it did, the trial court relied on Taylor v. City of Beardstown, 142 Ill. App.3d 584, 96 Ill.Dec. 524, 491 N.E.2d 803 (1986), and Kolanowski v. Illinois Valley Community Hospital, 188 Ill.App.3d 821, 136 Ill.Dec. 135, 544 N.E.2d 821 (1989). Those cases, however, involved claims against hospitals based on common law negligence principles, not statutory actions against nursing home owners or licensees pursuant to the Nursing Home Care Act. In addition, both concerned situations *776 where there was an issue as to whether and in what manner patients should have been physically restrained.
There is no question that the decision to physically restrain a hospital patient requires the exercise of medical judgment. The same is true of the decision to restrain the resident of a nursing home. The Nursing Home Care Act specifically states that restraints or confinements may not be employed "except as ordered by a physician." 210 ILCS 45/2-106(b) (West 2000). In the case before us, however, restraints are not at issue. No claim is made that plaintiff should have been restrained and was not or that her injuries were the proximate result of some failure by defendants to employ appropriate physical confinements.
Under the Nursing Home Care Act, actionable neglect includes a failure to provide adequate "personal care" which failure results in physical injury to the resident. 210 ILCS 45/1-117 (West 2000). "Personal care" is defined to mean assistance with, among other things, "movement, bathing or other personal needs or maintenance, or general supervision and oversight of the physical and mental well-being" of the resident. 210 ILCS 45/1-120 (West 2000). These are the predicate for plaintiff's claim here. As described earlier in this disposition, the gravamen of plaintiff's complaint is that defendants breached their statutory duties to her by failing to provide the supervision and assistance necessary under the circumstances to enable her to move safely from her bed to the bathroom in her room.
A similar situation was presented in Owens v. Manor Health Care Corp., 159 Ill.App.3d 684, 111 Ill.Dec. 431, 512 N.E.2d 820 (1987). In that case, a nursing home resident who had fallen and broken his hip while attempting to get out of his wheelchair brought suit against the facility under the Nursing Home Care Act. Among his allegations were that the facility had failed to provide adequate supervision, failed to attend to his needs, and negligently allowed him to remove himself from his wheelchair.
The nursing home moved to dismiss on the grounds that plaintiff's complaint was fatally defective because it did not include a written report from a health professional, as required by section 2-622. The circuit court granted that motion, but the appellate court reversed. It held that the negligence alleged in the complaint did not constitute "healing art malpractice" within the meaning of section 2-622 because it did not arise from medical diagnosis or treatment.
In the appellate court's view,
"[t]he plaintiff merely fell as he attempted to remove himself from his wheelchair. Expert testimony from a health-care professional is not required to assess the acts of the defendant. The determination to be made is not inherently one of medical judgment." Owens v. Manor Health Care Corp., 159 Ill. App.3d at 688-89, 111 Ill.Dec. 431, 512 N.E.2d 820.
Accordingly, the court concluded that plaintiff was not required to comply with section 2-622. It therefore reversed the judgment dismissing plaintiff's claim with prejudice and remanded the cause to the circuit court for further proceedings. Owens v. Manor Health Care Corp., 159 Ill. App.3d at 689, 111 Ill.Dec. 431, 512 N.E.2d 820.
Although the appellate court in the case before us reached the same result, it employed a different analysis. The Owens court focused on the nature of the particular wrongdoing alleged in the complaint. Under its approach, the pivotal inquiry is whether the negligence claimed by a nursing home resident could be construed as *777 "healing arts malpractice." If it cannot, section 2-622 is inapplicable. If it can, however, the reasoning of Owens would require that section 2-622 be followed.
Under the Owens approach, a possibility remains that some claims under the Nursing Home Care Act will be subject to section 2-622's requirements. The appellate court in this case, however, found that an irreconcilable conflict existed between the Nursing Home Care Act, on the one hand, and the legislative package with which section 2-622 was enacted, on the other. It resolved the conflict by holding: (1) that the Nursing Home Care Act was more specifically applicable to plaintiff's cause of action than section 2-622 and (2) that requiring nursing home residents to comply with section 2-622 as a condition of filing suit under the Nursing Home Care Act would thwart the purpose of the Act. Based on these principles, the appellate court found it unnecessary to assess whether particular conduct would otherwise constitute "healing art malpractice." It ruled simply that the mandates of section 2-622 are not binding on plaintiffs who seek recovery under the Nursing Home Care Act. 325 Ill.App.3d at 136-38, 258 Ill.Dec. 722, 757 N.E.2d 107.
The approach taken by the appellate court is sound. In construing the statutes at issue in this case and the relationship between them, the court may consider the reason and necessity for the legislation, the evils it was designed to remedy, and the objects and purposes the General Assembly sought to achieve. See People v. Woods, 193 Ill.2d 483, 487, 250 Ill.Dec. 730, 739 N.E.2d 493 (2000). Section 2-622 postdates the Nursing Home Care Act and had a different objective than that statute. As indicated earlier in this disposition, the Nursing Home Care Act was directed specifically at reforming the nursing home industry. Section 2-622, on the other hand, is one of a number of provisions added to the Code of Civil Procedure in 1985 by Public Act 84-7, eff. August 16, 1985, in response to what was perceived by the General Assembly to be a crisis in the area of medical malpractice litigation. Miller v. Rosenberg, 196 Ill.2d 50, 60, 255 Ill.Dec. 464, 749 N.E.2d 946 (2001).
The Nursing Home Care Act sought to achieve its purposes by expanding the criminal and civil liability of nursing home owners and licensees and by encouraging nursing home residents to press their claims as private attorneys general. Under the Act, litigation was viewed as an engine of reform. Just the opposite was true of the medical malpractice reform legislation with which section 2-622 was enacted. That set of laws viewed private damage claims as detrimental. Rather than expand opportunities for plaintiffs to seek redress, the medical malpractice reform legislation was designed to protect defendants. Its provisions were enacted with a view to reducing the number of medical malpractice suits and lowering the size of the awards in medical malpractice cases where plaintiffs succeed in establishing their claims. Miller v. Rosenberg, 196 Ill.2d at 60-61, 255 Ill.Dec. 464, 749 N.E.2d 946, quoting Ill.Ann.Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 30 (Smith-Hurd Supp.1992).
The opposing nature of the two sets of laws is evident from their provisions. The medical malpractice reform legislation expressly bans recovery of punitive damages in all cases in which the plaintiff seeks damage by reason of medical, hospital or other healing art malpractice. 735 ILCS 5/2-1115 (West 2000). By contrast, the Nursing Home Care Act allows plaintiffs to recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendants. Dardeen *778 v. Heartland Manor, Inc., 186 Ill.2d 291, 300, 238 Ill.Dec. 30, 710 N.E.2d 827 (1999).
In medical malpractice actions, plaintiffs must pay their own attorney fees. In addition, the amount of fees a plaintiff may pay his or her own lawyer on a contingency basis is limited. The higher recovery, the lower the permissible rate. 735 ILCS 5/2-1114 (West 2000). Private rights of action for damages under the Nursing Home Care Act, on the other hand, actually benefit from a fee-shifting provision. The attorney fees for a successful plaintiff must be paid by the defendant nursing home licensee, not the plaintiff, and the amount of fees that the plaintiff's attorney may receive is not subject to any statutory maximum. 210 ILCS 45/3-602 (West 2000).
In addition to authorizing statutory fee awards, the Nursing Home Care Act contains a number of additional provisions whose purpose is to encourage plaintiffs to bring private rights of action. Under the Act, damages may be recovered through class actions. 210 ILCS 45/3-604 (West 2000). Exhaustion of administrative remedies is not required prior to commencing suit. 210 ILCS 45/3-604 (West 2000). The damages a plaintiff recovers may not be taken into consideration for purposes of considering the plaintiff's eligibility for medical assistance under the Public Aid Code (305 ILCS 5/1-1 et seq. (West 2000)). 210 ILCS 45/3-605 (West 2000). In addition, a nursing home licensee is prohibited from taking any retaliatory action against a resident who asserts a private right of action to recover damages from it, regardless of the outcome. 210 ILCS 45/3-608 (West 2000).
The medical malpractice legislation of which section 2-622 is a part contains no corresponding incentives for pursuing damage claims. To the contrary, it provides a disincentive for the filing of healing arts malpractice claims. It does so by subjecting unsuccessful litigants to suits for malicious prosecution in which the medical provider is relieved of the obligation to plead and prove special injury. 735 ILCS 5/2-109 (West 2000); Miller v. Rosenberg, 196 Ill.2d at 63-64, 255 Ill.Dec. 464, 749 N.E.2d 946.
The applicability of section 2-622 to Nursing Home Care Act proceedings cannot be assessed independently of the remainder of the medical malpractice legislative package with which it was enacted. If plaintiff's private right of action for damages under the Nursing Home Care Act were bound by the terms of section 2-622, it would likewise be bound by the other statutes directed at medical malpractice which were inserted into the Code of Civil Procedure by the legislature when it adopted section 2-622. There would be no principled way to differentiate between the various statutory restrictions. As a result, the remedies available to plaintiff would be drastically curtailed and her right to recover attorney fees would be lost. Core provisions of the Nursing Home Care Act would be rendered inoperable. Such a result would be contrary to a basic rule of statutory interpretation, namely, that whenever possible courts must construe statutes so that no part is rendered a nullity. See Bonaguro v. County Officers Electoral Board, 158 Ill.2d 391, 397, 199 Ill.Dec. 659, 634 N.E.2d 712 (1994).
In reaching this conclusion, we are aware that many types of claims actionable under the Nursing Home Care Act have nothing whatever to do with medical or healing art malpractice. Nursing home residents are entitled to invoke the provisions of the Nursing Home Care Act to obtain damages for violation of any of the rights enumerated in the statute. 210 ILCS 45/3-602 (West 2000). These include the right to manage financial affairs (210 ILCS 45/2-102 (West 2000)); the *779 right to retain and use personal property (210 ILCS 45/2-103 (West 2000)); the right to be free from abuse or neglect (210 ILCS 45/2-107 (West 2000)); the right to unimpeded private and uncensored communication (210 ILCS 45/2-108 (West 2000)); the right to free exercise of religion (210 ILCS 45/2-109 (West 2000)); the right to be discharged after giving written notice of desire to be discharged (210 ILCS 45/2-111 (West 2000)); and the right to refuse to perform labor for the facility (210 ILCS 45/2-113 (West 2000)). In addition, the Act imposes liability on the owner and licensee of a nursing home for any intentional or negligent act or omission by their agents or employees which injures a resident. 210 ILCS 45/3-601 (West 2000).
Where the intentional or negligent act or omission does not involve a resident's medical care and the situation is not one where expert testimony from a health-care professional is necessary in order to assess the defendant's actions, there is no possible basis for invoking the Healing Arts Malpractice Act. In such cases, it is undisputed that a nursing home resident's complaint would not be subject to dismissal for failure to comply with section 2-622 of the Code of Civil Procedure (735 ILCS 5/2-622 (West 2000)). See Owens v. Manor Health Care Corp., 159 Ill.App.3d at 688-89, 111 Ill.Dec. 431, 512 N.E.2d 820. As a result, the broad remedial provisions of the Nursing Home Care Act would retain some viability even if section 2-622 were applied to Nursing Home Care Act claims involving a resident's medical care. That viability, however, would be more theoretical than real.
The overwhelming majority of civil cases against nursing homes arising from the treatment of residents involve falls, as this case does. Indeed, one commentator has observed that nursing home cases involving causes of injuries other than falls are too few to permit statistical analysis. Annotation, L. Frantz, Patient Tort Liability of Rest, Convalescent, or Nursing Homes, 83 A.L.R.3d 871, 878 (1978). As defendants conceptualize these cases, a nursing home's failure to take the precautions necessary to prevent a resident from taking an injurious fall implicates the exercise of medical judgment. If defendants' position were accepted, there would therefore be few cases involving private rights of action against nursing homes where compliance with section 2-622 and the related provisions governing medical malpractice provisions would not be necessary. Correspondingly, there would be few opportunities for injured nursing home residents to avail themselves of the Nursing Home Care Act's special remedies and protections. As a practical matter, the opportunities the General Assembly meant to confer on such residents to protect themselves and enforce the law would be fundamentally compromised.
Defendants complain that if nursing home residents are not held to the requirements of section 2-622 when they bring statutory claims under the Nursing Home Care Act, the courts will be creating a synthetic, unreasonable and unworkable distinction between nursing homes, on the one hand, and hospitals and physicians, on the other. What defendants fail to appreciate is that the decision to differentiate nursing home owners and licensees from healing arts practitioners originated with the legislature, not the judiciary. Section 2-622 was enacted after passage of the Nursing Home Care Act. At the time section 2-622 was adopted in 1985, the Nursing Home Care Act had already been in effect for approximately five years. Had the General Assembly wished to subject claims against nursing home owners and licensees to section 2-622's requirements, it could easily have included them in the statute's provisions, just as it did with hospitals. It did not.
*780 While defendants may find it anomalous to treat litigation against the owners and licensees of nursing homes differently than actions against hospitals, the General Assembly may have had sound reasons to do so. First and foremost, nursing homes have been plagued by an extensive history of patient abuse not shared by hospitals. In contrast to hospitals, which have historically delivered care through professional physicians and nurses, most care in nursing homes is delivered by nonprofessional or paraprofessional aides. In addition, while the majority of private hospitals are not-for-profit, the majority of nursing homes, including the nursing home in this case, are profit-making enterprises, raising the concern that profit motives may adversely affect the care that nursing home patients receive. See Regan, Regulating the Business of Medicine, 30 Colum. J.L. & Soc. Probs. 635, 669 (1997).
It is important to note, moreover, that while claims under the Nursing Home Care Act may sometimes involve a resident's medical care, they do not directly implicate the individual health-care providers. A failure to provide adequate medical care that "results in physical or mental injury to a resident, or in the deterioration of a resident's physical or mental condition" constitutes neglect (210 ILCS 45/1-117 (West 2000)) and is prohibited by the Act (210 ILCS 45/2-107 (West 2000)). The only defendants liable for damages, costs, and attorney fees under the Act, however, are the owners and licensees of the nursing home. See 210 ILCS 45/3-601, 3-602 (West 2000). Nothing in the Nursing Home Care Act requires owners or licensees to be medical professionals themselves, and nothing in the Act authorizes nursing home residents to recover damages for medical malpractice from the individuals who actually provided the care. Suits against those individuals must be asserted independently of the Nursing Home Care Act.
The justification for section 2-622 is therefore absent when a resident brings a statutory claim against the nursing home's owner or licensee under the Nursing Home Care Act. Such cases pose no threat to the viability of the medical profession. They present no danger of compromising the ability of medical professionals to provide care to patients. They serve only to ensure that nursing home owners and licensees are held to account for violation of their legal obligations, as the General Assembly intended when it passed the Nursing Home Care Act into law.
For the foregoing reasons, the appellate court's answer to the question of law certified by the trial court was correct. Plaintiffs who assert private rights of action under the Nursing Home Care Act are not required to comply with the mandates of section 2-622. As a result, the circuit court should not have dismissed the action brought by the plaintiff in this case based on her failure to attach to her complaint the materials specified by that statute. The appellate court's judgment is therefore affirmed.
Affirmed.
Justice GARMAN, dissenting:
I respectfully dissent. The majority finds that the Nursing Home Care Act (Act) (210 ILCS 45/1-101 et seq. (West 2000)) and section 2-622 of the Code of Civil Procedure (Code) (735 ILCS 5/2-622 (West 2000)), known as the Healing Art Malpractice Acts, are wholly incompatible, so that section 2-622 does not apply to any claims brought under the Act. However, when two statutes conflict, the court has a duty to interpret the statutes in a way that avoids inconsistency and that gives effect to both statutes where reasonably possible. McNamee v. Federated Equipment & Supply Co., 181 Ill.2d 415, 427, 229 Ill.Dec. 946, 692 N.E.2d 1157 (1998). To that end, *781 I believe that section 2-622 does apply to claims under the Act alleging that nurses or other health-care professionals employed by nursing homes caused injury to residents because of healing art malpractice.
According to section 1-108(b) of the Code (735 ILCS 5/1-108(b) (West 2000)), article II of the Code applies to proceedings brought under a statute that does not itself regulate procedure. The Act does not regulate pleadings. Nonetheless, the majority correctly notes that section 2-622 does not apply to all actions. Section 2-622 applies to: "any action * * * in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." 735 ILCS 5/2-622(a) (West 2000). Therefore, we should determine whether a "healing art malpractice" claim can ever be alleged under the Act.
The phrase "healing art" includes "an entire branch of learning dealing with the restoration of physical or mental health." Lyon v. Hasbro Industries, Inc., 156 Ill. App.3d 649, 654, 109 Ill.Dec. 41, 509 N.E.2d 702 (1987); see also Owens v. Manor Health Care Corp., 159 Ill.App.3d 684, 687, 111 Ill.Dec. 431, 512 N.E.2d 820 (1987). "Malpractice" is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury * * * to the recipient of those services." Black's Law Dictionary 959 (6th ed.1990). In evaluating whether a claim involves healing art malpractice, Illinois courts have focused on the nature of the negligent act rather than the location where the conduct occurred. Milos v. Hall, 325 Ill.App.3d 180, 184, 258 Ill.Dec. 965, 757 N.E.2d 654 (2001); Lyon, 156 Ill.App.3d at 655, 109 Ill.Dec. 41, 509 N.E.2d 702.
Nursing homes may employ health-care professionals. For example, nursing homes that employ nurses and provide nursing services are subject to the Act, which states that it applies to facilities that "provide[], through its ownership or management, personal care, sheltered care or nursing for 3 or more persons." (Emphasis added.) 210 ILCS 45/1-113 (West 2000). Healing art malpractice claims can be brought against nurses. See, e.g., Moyer v. Southern Illinois Hospital Service Corp., 327 Ill.App.3d 889, 903-04, 261 Ill. Dec. 864, 764 N.E.2d 155 (2002); Shanks v. Memorial Hospital, 170 Ill.App.3d 736, 737, 121 Ill.Dec. 371, 525 N.E.2d 177 (1988).
The Act clearly authorizes the courts to hold nursing homes liable for the actions of its employees. Section 3-601 provides: "The owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." 210 ILCS 45/3-601 (West 2000). Medical malpractice is a type of negligence claim. See Black's Law Dictionary 959 (6th ed.1990). It logically follows that a nursing home can be held liable under section 3-601 when its health-care professional employee commits healing art malpractice, causing injury to a resident. The majority seems to acknowledge as much. 203 Ill.2d at 106, 272 Ill. Dec. at 592-93, 787 N.E.2d at 778-79.
The majority correctly recognizes that there are some conflicts between the Act and the medical malpractice reform legislation. 203 Ill.2d at 103-05, 272 Ill.Dec. at 591-92, 787 N.E.2d at 777-78. The reform legislation, including section 2-622, includes certain procedural and remedial rules that differ from rules of the Act. A conflict arises between these two sets of legislation, then, when a plaintiff raises a healing art malpractice claim under the Act. While the majority views this conflict *782 as proof of the "opposing nature" of these statutes, rendering them mutually exclusive, I view them as conflicts to be resolved through the application of statutory construction principles. 203 Ill.2d at 103-04, 272 Ill.Dec. at 591, 787 N.E.2d at 777. When two statutes conflict, the more specific statute controls over the more general provisions unless the legislature makes it clear that it intends the more general statute to be controlling. Stone v. Department of Employment Security Board of Review, 151 Ill.2d 257, 266, 176 Ill.Dec. 862, 602 N.E.2d 808 (1992).
The appellate court applied this statutory construction principle. 325 Ill.App.3d 129, 135-36, 258 Ill.Dec. 722, 757 N.E.2d 107. The majority briefly acknowledges and agrees with the appellate court's conclusion that the Act should apply because it is more specifically applicable to plaintiff's cause of action than section 2-622. 203 Ill.2d at 102-03, 272 Ill.Dec. at 590-91, 787 N.E.2d at 776-77. In reaching this conclusion, the appellate court discussed two approaches: the traditional approach examining the nature of the cause of action and the Tosado plurality approach looking to the category of defendants (Tosado v. Miller, 188 Ill.2d 186, 195, 242 Ill.Dec. 120, 720 N.E.2d 1075 (1999)). 325 Ill.App.3d at 135-36, 258 Ill.Dec. 722, 757 N.E.2d 107.
In Tosado, we evaluated whether to apply the two-year statute of limitations from the Code (735 ILCS 5/13-212(a) (West 1992)) or the one-year limitations period from the Tort Immunity Act (745 ILCS 10/8-101 (West 1996)) to a medical malpractice claim. Tosado, 188 Ill.2d at 190-91, 242 Ill.Dec. 120, 720 N.E.2d 1075. The Tosado plurality focused on the class of defendants in determining which was more specific because the Tort Immunity Act was enacted with the legislative intent to provide protection to a specific class of defendants, local governmental entities. Tosado, 188 Ill.2d at 195, 242 Ill.Dec. 120, 720 N.E.2d 1075. Five members of the court did not agree with this approach in that case. Tosado, 188 Ill.2d at 197-98, 242 Ill.Dec. 120, 720 N.E.2d 1075 (Freeman, C.J., specially concurring); 188 Ill.2d at 198-200, 242 Ill.Dec. 120, 720 N.E.2d 1075 (Heiple, J., specially concurring); 188 Ill.2d at 200, 242 Ill.Dec. 120, 720 N.E.2d 1075 (Harrison, J., dissenting); 188 Ill.2d at 201-11, 242 Ill.Dec. 120, 720 N.E.2d 1075 (McMorrow, J., dissenting, joined by Rathje, J.). The Act, in contrast, is not designed to protect defendant nursing homes. Therefore, I conclude that the Tosado approach is not relevant to the present case.
I do agree with the appellate court's conclusion in this case that we should apply the traditional rule that the nature of the cause of action determines which statute is more specific and therefore controlling. See, e.g., Hernon v. E.W. Corrigan Construction Co., 149 Ill.2d 190, 196, 172 Ill.Dec. 200, 595 N.E.2d 561 (1992). However, I believe the appellate court incorrectly focused on the nature of plaintiff's cause of action. We should not review plaintiff's claims because of the procedural posture of the present case. We review only the general certified question, which requires us only to determine when, if ever, section 2-622, and impliedly the other medical malpractice reform legislation, applies to claims brought under the Act. 203 Ill.2d at 96, 272 Ill.Dec. at 587-88, 787 N.E.2d at 773-74. These sets of laws conflict only with regard to medical malpractice claims. Thus, we must assess whether the Act or the medical malpractice reform legislation more specifically addresses medical malpractice claims.
The Act and the medical malpractice reform legislation both encompass malpractice claims. As discussed above, the *783 Act generally addresses negligence claims by enabling claimants to hold liable the owner and licensee of a nursing home facility for "any intentional or negligent act or omission of their agents or employees which injures the resident." (Emphasis added.) 210 ILCS 45/3-601 (West 2000). Medical malpractice is one type of negligence claim. See Black's Law Dictionary 959 (6th ed.1990). In contrast, the medical malpractice reform legislation, including section 2-622, makes procedural and remedial amendments applicable specifically to medical malpractice claims rather than all negligence claims. Thus, I conclude that the specific provisions of the medical malpractice reform legislation should apply to healing art malpractice claims brought under the Act, which addresses negligence only generally, because the legislature did not clearly indicate an intent that the general provisions apply. Stone, 151 Ill.2d at 266, 176 Ill.Dec. 862, 602 N.E.2d 808.
The Act became effective March 1, 1980, and Public Act 84-7, which contained section 2-622 and other medical malpractice reform provisions, became effective August 15, 1985. We presume the legislature acts rationally, enacting statutes with full awareness of all previous enactments. State v. Mikusch, 138 Ill.2d 242, 247-48, 149 Ill.Dec. 704, 562 N.E.2d 168 (1990). We presume the legislature enacted reform to medical malpractice actions with knowledge of the Act. If the legislature wanted to make the Act completely immune to these reform measures, it could have excluded professional health-care services in nursing homes. It did not. We should not read into a statute limitations or exceptions that depart from its plain meaning. Lauer v. American Family Life Insurance Co., 199 Ill.2d 384, 390-91, 264 Ill.Dec. 87, 769 N.E.2d 924 (2002). In addition, where two statutes directly conflict, typically the laterhere the medical malpractice reform legislationshould prevail because it constitutes the more recent expression of legislative intent. Jahn v. Troy Fire Protection District, 163 Ill.2d 275, 282, 206 Ill.Dec. 106, 644 N.E.2d 1159 (1994).
Apparently the majority eschews application of these statutory construction principles because it concludes that these laws as a whole are inherently in opposition. 203 Ill.2d at 103-04, 272 Ill.Dec. at 591-92, 787 N.E.2d at 777-78. I disagree. The Act responded to "concern over reports of `inadequate, improper and degrading treatment of patients in nursing homes.'" Harris v. Manor Healthcare Corp., 111 Ill.2d 350, 357-58, 95 Ill.Dec. 510, 489 N.E.2d 1374 (1986), quoting 81st Ill. Gen. Assem., Senate Debates, May 14, 1979, at 184 (statements of Senator Berning). The Act explicitly conferred certain rights on nursing home residents, including "the right to manage their own finances, the right to refuse treatment, and the right to be free from abuse and neglect by nursing home personnel." Fisher v. Lexington Health Care, Inc., 188 Ill.2d 455, 461, 243 Ill.Dec. 46, 722 N.E.2d 1115 (1999); 210 ILCS 45/2-101 through 2-113 (West 2000).
The purpose of section 2-622 and other medical malpractice legislation enacted by Public Act 84-7 was to respond to "what was perceived to be a crisis in the area of medical malpractice." Bernier v. Burris, 113 Ill.2d 219, 229, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986). The legislature sought to address this crisis by reducing the amount of frivolous suits filed and to eliminate such suits at an early stage before litigation expenses have mounted. DeLuna v. St. Elizabeth's Hospital, 147 Ill.2d 57, 65, 167 Ill.Dec. 1009, 588 N.E.2d 1139 (1992).
The purposes of these two statutes should not be characterized solely in terms of encouraging or discouraging litigation, or of being pro-plaintiff or pro-defendant. *784 The goal of improving nursing home care is not impeded by eliminating frivolous healing art malpractice lawsuits against health-care professionals.
The majority discusses the provisions of the medical malpractice reform legislation that impose procedural and remedial limitations absent from the Act, including a prohibition of recovery of punitive damages (735 ILCS 5/2-1115 (West 2000)) and a lack of corresponding availability of recovery of costs and attorneys' fees (210 ILCS 45/3-602 (West 2000)). 203 Ill.2d at 104, 272 Ill.Dec. at 591-92, 787 N.E.2d at 777-78. However, in some cases the majority overstates the importance of certain provisions in support of its conclusion that the two statutes are by nature in opposition. 203 Ill.2d at 103-04, 272 Ill.Dec. at 591-92, 797 N.E.2d at 777-78.
For example, the majority asserts that the medical malpractice reforms "provide [] a disincentive for the filing of healing arts malpractice claims * * * by subjecting unsuccessful litigants to suits for malicious prosecution." 203 Ill.2d at 105, 272 Ill.Dec. at 592, 787 N.E.2d at 778. The reform litigation does remove the requirement of pleading and proving special injury from malicious prosecution claims. 735 ILCS 5/2-109 (West 2000). However, claimants still must prove that the healing art malpractice claim was filed without probable cause and with malice. Miller v. Rosenberg, 196 Ill.2d 50, 58, 255 Ill.Dec. 464, 749 N.E.2d 946 (2001). Therefore, all unsuccessful litigants will not be sued for malicious prosecution. The purpose of section 2-109 was to "liberalize the availability of a suit for malicious prosecution as a means of punishing and discouraging the filing of ill-grounded medical malpractice cases." Miller, 196 Ill.2d at 63, 255 Ill.Dec. 464, 749 N.E.2d 946, quoting Ill. Ann.Stat., ch. 110, par. 2-109, Historical & Practice Notes, at 31 (Smith-Hurd Supp. 1992). Thus, this provision should not deter plaintiffs with potentially viable claims, and it should not impede the Act's general purpose of improving nursing home care.
In addition, the majority notes that the medical malpractice reform legislation limits contingency fees that can be paid to attorneys. 735 ILCS 5/2-1114 (West 2000); 203 Ill.2d at 104, 272 Ill.Dec. at 591-92, 787 N.E.2d at 777-78. When evaluating the constitutionality of this contingency fee provision, however, we stated that we did not believe that section 2-1114 "will work to limit litigants access to the courts." Bernier v. Burris, 113 Ill.2d 219, 251, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986). Finally, the majority emphasizes provisions in the Act that encourage plaintiffs to bring private rights of action, including the ability of plaintiff to file class action suits. 210 ILCS 45/3-604 (West 2000). Class action suits will rarely, if ever, be an appropriate format for raising medical malpractice cases which by nature typically involve a specific instance of negligence by an individual health-care professional in the care of an individual patient rather than a consistent, widespread pattern of negligence by the same defendant.
The majority also asserts that the Act would be limited further by the other medical malpractice reform provisions that were passed with section 2-622. 203 Ill.2d at 105, 272 Ill.Dec. at 592, 787 N.E.2d at 778. I believe that these other medical malpractice reforms will not frustrate the purposes of the Act. Section 2-622 was a part of Public Act 84-7, which amended sections 2-1109, 2-1205, 8-2001, and 8-2003 of the Code (Ill.Rev.Stat.1985, ch. 110, pars. 2-1109, 2-1205, 8-2001, 8-2003) and added sections 2-114, 2-611.1, 2-622, 2-1010, 2-1012 through 2-1020, 2-1114, 2-1115, 2-1701 through 2-1719, and 8-2501 to the Code (Ill.Rev.Stat.1985, ch. 110, pars. 2-1020, 2-1114, 2-1115, 2-1701 through 2-1719, 8-2501).
*785 In examining all of these provisions, only one appears relevant to the potential concern of discouraging litigation or reducing recovery against nursing homes besides the attorney fees and punitive damages issues already discussed. Section 2-1205 of the Code (735 ILCS 5/2-1205 (West 2000)) addresses reduction in amount of recovery, but we have interpreted the specific language of this provision as limiting negligence actions against only hospitals and physicians. Bernier v. Burris, 113 Ill.2d 219, 242, 100 Ill.Dec. 585, 497 N.E.2d 763 (1986); 735 ILCS 5/2-1205 (West 2000) (section 2-1205 states that it applies to "any judgment in an action to recover for that injury based on an allegation of negligence or other wrongful act, not including intentional torts, on the part of a licensed hospital or physician"). Therefore, no other provision of the medical malpractice reform legislation potentially conflicts with the purposes of the Act.
In addition, as the majority concedes, there are many types of actionable claims under the Act that do not involve healing art malpractice. 203 Ill.2d at 105, 272 Ill.Dec. at 592-93, 787 N.E.2d at 778-79. Given these numerous other claims that will not be subject to the medical malpractice reform legislation, I disagree with the majority's assertion that "[c]ore provisions of the Nursing Home Care Act would be rendered inoperable" in all cases. 203 Ill.2d at 105, 272 Ill.Dec. at 592, 787 N.E.2d at 778. I do not believe that the handful of conflicting provisions and the majority's characterization of the opposing purposes of the statutes are sufficient to support its conclusion that the medical malpractice reform legislation does not apply to any claims brought under the Act, especially in the absence of supporting statutory language.
In fact, I do not believe that these differences about attorney fees and punitive damages significantly limit the Act because these limits would apply only to the narrow class of healing art malpractice claims brought against health-care professionals employed by nursing homes. The majority dismisses this distinction because "[t]he overwhelming majority of civil cases against nursing homes" involve falls, so the medical malpractice reform legislation will apply to most claims brought under the Act. 203 Ill.2d at 106-07, 272 Ill.Dec. at 593, 787 N.E.2d at 779. I disagree. It is not clear that many, much less all, falls resulting in injury are caused by medical malpractice by health-care professionals employed by nursing homes. Ordinary negligence through inadequate staffing and unsafe premises conditions, for example, may contribute to a fall by a nursing home resident. In addition, again, the procedural posture of this case requires us to review only the appellate court's response to the broad certified question of the trial court. 203 Ill.2d at 96, 272 Ill. Dec. at 587, 787 N.E.2d at 773. It is irrelevant and inappropriate for us to evaluate whether plaintiff's claims involving her fall or hypothetical cases involving falls necessarily would be subject to the medical malpractice reform legislation.
The holding of the majority has the disturbing and illogical consequence that healing art malpractice by the same health-care professional will be subject to different procedural and remedial rules solely based on the physical location of malpractice. The majority responds that the legislature may have had sound reasons to treat these two health-care service providers differently, including the history of patient abuse unique to nursing homes and the greater prevalence of care by nonprofessional or paraprofessional aides in nursing homes. 203 Ill.2d at 108, 272 Ill. Dec. at 594, 787 N.E.2d at 780. However, claims of patient abuse likely do not implicate effortsor lack thereofto restore *786 physical or mental health by health-care professionals, so these claims do not sound in healing art malpractice. In addition, nonprofessionals by definition are not health-care professionals potentially subject to malpractice claims. The majority's explanations do not adequately address why the legislature would want to treat nursing homes differently from hospitals specifically concerning healing art malpractice claims.

CONCLUSION
I acknowledge that certain medical malpractice reform provisions conflict with the Act when a plaintiff brings a healing art malpractice claim under the Act. Several principles of statutory construction indicate that we should resolve this conflict by applying the medical malpractice reform provisions, including section 2-622, to such claims. By applying the reform legislation, all medical malpractice cases will be treated consistently, allowing both statues to operate together. See McNamee, 181 Ill.2d at 427, 229 Ill.Dec. 946, 692 N.E.2d 1157. The reform legislation more specifically addresses healing art malpractice claims. See Hernon, 149 Ill.2d at 196, 172 Ill.Dec. 200, 595 N.E.2d 561. We presume the legislature enacted the reform legislation with knowledge of the Act, and the reforms did not exclude claims brought under the Act from their scope. See Mikusch, 138 Ill.2d at 247-48, 149 Ill.Dec. 704, 562 N.E.2d 168. The reform legislation is the later enactment of the two conflicting sets of laws. See Jahn, 163 Ill.2d at 282, 206 Ill.Dec. 106, 644 N.E.2d 1159. I believe the majority should have applied these principles in order to avoid the unwarranted consequence that healing art malpractice claims will be subject to differing procedural and remedial rules solely on the basis of the physical location of where the malpractice occurred.
I believe the appellate court and the majority are mistaken in responding to the certified question that plaintiffs suing nursing homes under the Act never have to comply with section 2-622. I assert that we should follow established principles of statutory construction by applying the medical malpractice reform legislation to the narrow class of claims brought under the Act alleging healing art malpractice by health-care professionals employed by nursing homes that caused injury. Therefore, I would answer the certified question by stating that a plaintiff bringing suit under the Act is required to comply with the Healing Arts Malpractice Act if he or she alleges a healing art malpractice claim.
Chief Justice McMORROW and Justice THOMAS join in this dissent.